508 So.2d 1131 (1987)
In the Matter of the ESTATE OF Morris ISAACSON, Deceased; Joan Isaacson, Administratrix,
v.
Philip A. ISAACSON.
No. 56336.
Supreme Court of Mississippi.
June 3, 1987.
*1132 Harry J. Rosenthal, Billy Don Hall, Jackson, for appellant.
Rufus Creekmoore, W.E. Gore, Jr., R.G. Nichols, Jr., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
This is an appeal from Hinds County Chancery Court, First Judicial District, wherein the estate of Morris Isaacson contended that certain certificates of deposit formerly owned by the decedent became the property of the estate. The chancellor determined that the certificates passed to a surviving joint owner instead, and the estate has filed this appeal. Finding no error, we affirm.

FACTS
After Morris Isaacson died on February 1, 1984, his estate gathered seven certificates of deposit (CDs) from three different banks. The CDs were:

1. 10-12-82 Unifirst $10,000
2. 10-22-82 Unifirst $10,000
3. 10-22-82 Unifirst $10,000
4. 7-26-83 1st MS Nat'l $19,000
5. 8-03-83 Jxn VA FCU[*] $10,000
6. 11-02-83 Jxn VA FCU $10,000
7. 1-03-84 Jxn VA FCU $100,000

Philip, Morris's brother, intervened, asserting an interest in the CDs since he and Morris were joint owners of the CDs with rights of survivorship.
All of the CDs either stated (or were attached to signature cards that stated) that Philip and Morris were joint owners with rights of survivorship. The signature cards were signed by Philip and Morris.
The Unifirst certificates do not contain the words "the order of" or "to bearer". At the bottom of the CDs, in bold type, is the word "NON-TRANSFERABLE".
The 1st Mississippi National Bank CD does not recite that it is payable either "to the order of" or "to bearer". It further recites that:
No assignment of this deposit shall be binding on 1st Mississippi National Bank or its successors or assigns until written notice of such assignment signed by the depositor(s) or the last registered assignee shall have been acknowledged in writing by this bank.
In the left hand corner, in bold type, appear the words "NON-NEGOTIABLE".
The Jackson VA Federal Credit Union CDs do not state that they are payable to "order of" or "to bearer". Each CD states "This certificate may not be pledged, transferred or assigned to any party other than the Credit Union." In large letters at the bottom of each CD appear the words "NOT TRANSFERABLE".
*1133 The estate relies primarily on the case of Thomas v. Estate of Eubanks, 358 So.2d 709 (Miss. 1978), where a CD that qualified as a negotiable instrument passed to the decedent's estate instead of an alternative payee relying on the presumption of survivorship rights.
Despite the obvious nature of these CDs, Morris's estate contended that the CDs were negotiable instruments, that there was no evidence that Morris ever gave up any rights to the certificates, and he retained possession of all certificates. Therefore, the estate contended Morris was a holder in due course and the CDs should go to his estate.
At trial, Philip put on evidence that Morris clearly intended to create a joint ownership with rights of survivorship regarding the CDs. Bank employees that issued each CD testified that they knew Morris and he understood that when he died, the CDs would go to his brother.
On January 14, 1985, the chancellor found that the CDs were not negotiable, that the deposits created a joint tenancy with rights of survivorship, and that Thomas v. Estate of Eubanks was inapplicable. Therefore, the CDs went to Philip as a surviving joint owner, and Morris's estate has appealed to this Court.

LAW

I. THE LOWER COURT ERRED IN ADJUDICATING THE CERTIFICATES OF DEPOSIT WERE NOT NEGOTIABLE.
In asserting this assignment of error, the estate argues that since the CDs were negotiable, Thomas v. Estate of Eubanks, supra, should be followed. For reasons set forth in Part II of this opinion, we find this case distinguishable from Thomas. For purposes of this section, we address only the negotiability question of the CDs.
The CDs in question were commonly referred to as savings or investment certificates. Certain savings certificates are certificates of deposit as the term is defined in Article 3 of the Uniform Commercial Code. Miss. Code Ann. § 75-3-104 provides:
(1) Any writing to be a negotiable instrument within this chapter must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or bearer.

(2) A writing which complies with the requirements of this section is
* * * * * *
(c) a "certificate of deposit" if it is an acknowledgment by a bank of receipt of money with an engagement to repay it; ... [Emphasis added]
See, e.g., Thomas v. Estate of Eubanks, supra (example of Article 3 negotiable CD).
Therefore, to be subject to Article 3, a certificate of deposit ordinarily must comply with all the requirements of negotiability. However, Miss. Code Ann. § 75-3-805 provides a statutory exception for a CD that lacks words of negotiability (i.e., is not payable to order or to bearer):
This chapter applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this chapter but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument. [Emphasis added]
See, e.g., Rand v. Moore, 414 So.2d 885, 887 (Miss. 1981). Bank of Crystal Springs v. 1st Nat'l Bank, 427 So.2d 968, 969-70 (Miss. 1983) (examples of § 75-3-805 "non-negotiable" CDs).
For Miss. Code Ann. § 75-3-805 to apply, the CD must be otherwise negotiable except for the "order or bearer" language. If, however, the CD is otherwise not negotiable, e.g., contains a conditional promise to pay, or whose terms prohibit transfer, that CD is not subject to Article 3. Miss. Code Ann. § 75-3-805; Harris, Non-Negotiable Certificates of Deposit: An Article *1134 9 Problem, 29 U.C.L.A.L.Rev. 330, 333 (1981).
Therefore, three classes of savings CDs have been identified:
1. § 75-3-104  Negotiable CD  (all requirements met; Article 3 applies);
2. § 75-3-805  "Non-negotiable" CD  (all requirements met except "order or bearer"; Article 3 applies with limitations); and
3. CDs that are otherwise not negotiable, i.e., by terms which preclude transfer (Article 3 does not apply).
Harris, 29 U.C.L.A.L.Rev. at 333.
Turning now to the CDs in question, it has been stipulated they do not fall in the first category. Morris's estate argues that Miss. Code Ann. § 75-3-805 should apply, but since all the CDs contain terms that preclude transfer ("not transferable", "not negotiable", "non-negotiable"), these CDs fall into the third category and are not subject to Article 3 of the U.C.C.

II. THE LOWER COURT ERRED IN ADJUDICATING THE RULING IN THOMAS V. ESTATE OF EUBANKS IS NOT APPLICABLE TO THIS CASE.
In Thomas, a CD was issued as follows: "Mrs. Ruby Eubanks has deposited in this bank $14,000 payable to the order of herself or Doyle Thomas in current funds twelve months after date on the return of this certificate properly endorsed with interest at 5%." [Emphasis added] 358 So.2d at 710. This CD met all requirements of negotiability and was in Ruby's possession during her lifetime.
When Ruby died, Doyle Thomas claimed ownership as a joint tenant with rights of survivorship. Thomas relied on the presumption of survivorship rights pursuant to Miss. Code Ann. § 81-5-63 (1972). Ruby's estate argued that since the CD was negotiable, Ruby was a holder in due course and since the CD was in Ruby's possession when she died, the proceeds should pass to the estate. This Court, through Justice Sugg, reasoned that to adopt the position of Thomas would render the provisions of the U.C.C. pertaining to CDs meaningless. 358 So.2d at 711.
In the case at bar, Morris's estate relies almost totally on that case, and claims it is dispositive of the issues before us. There are two striking dissimilarities, however: (1) The CD in Thomas was "negotiable", while the CDs before us are not "negotiable"; and (2) Thomas relied on a mere presumption of survivorship rights, while in the case before us there was a clear showing that a joint tenancy with rights of survivorship was intended. The Thomas CD was issued to alternative payees, and made no reference to any survivorship rights (i.e., payable to order of Ruby or Thomas, or survivor).[1]Thomas therefore stands for the proposition that in the absence of any survivorship provision, a joint tenancy will not be presumed, and, as a result, the CD will pass to the estate. See, e.g., Lovett v. Uptain, 450 So.2d 113 (Ala. Civ. App. 1983); Tucker v. Merchants Bank, 135 Vt. 597, 382 A.2d 212 (1977).
Assuming that the CDs before us were "negotiable," we still are not persuaded by the estate's argument that the provisions of the U.C.C. would usurp Morris's intention to create a joint tenancy with rights of survivorship. The key distinction between the instant case and Thomas is that the latter dealt with a statutory presumption of survivorship rights. In the case before us, however, the presence of signature cards and direct testimony by the bank employees show clearly that a joint tenancy with rights of survivorship was intended. This intent shall be given effect when lawfully evidenced. See, e.g., Vaughn v. Vaughn, 238 Miss. 342, 118 So.2d 620 (1960); Stephens v. Stephens, 193 Miss. 98, 8 So.2d 462 (1942).
It therefore follows that where a CD expressly states such an intent, the "negotiability" of the CD is of no consequence. *1135 Anderson's Uniform Commercial Code affirms our belief, stating:
There is nothing in the Code which prohibits including in the paper a provision that clearly states that there shall be survivorship between copayees. Consequently when a certificate of deposit is made out to two named individuals and expressly states "as joint tenants with right of survivorship and not as tenants in common," a joint tenancy arises and the survivor takes the entire interest upon the death of the other.
Anderson, § 3-116:23, at p. 347; U.C.C. § 3-110, comment 1 (no survivorship in absence of express language to that effect).
Finding the estate's other assignments of errors without merit, we decline to address them.

CONCLUSION
We find there was ample testimony from bank employees that Morris intended to create a joint ownership with right of survivorship in his brother when the CDs were issued. In addition, both Philip and Morris signed signature cards that announced the nature of their ownership. These facts distinguish this case from Thomas v. Estate of Eubanks, were the plaintiff/copayee relied only on a statutory presumption of survivorship rights. The lower court was correct in finding the proceeds of the CDs passed to Philip, the surviving joint owner, instead of the estate.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[*] Jackson VA Federal Credit Union
[1] In regard to a CD which is payable to "A or B, or survivor," we note that Miss. Code Ann. § 81-12-137 (Supp. 1986) provides that such language is conclusive evidence of an intent to create a joint ownership with rights of survivorship.