587 So.2d 236 (1991)
Etma R. COOPER
v.
Clifford CRABB, Executor, De Bonis Non of the Will of Jetta Robison Bethay; Timothy Allen Cooper, Maria Denise Cooper Wallace, Leonard Kirk Cooper, a Minor, Melinda Annette Cooper, a Minor, Orman Robison Cooper, II, a Minor, and Angela Ione Cooper, a Minor, By and Through Their Guardian Ad Litem, Roy O. Parker.
No. 89-CA-1345.
Supreme Court of Mississippi.
September 11, 1991.
*237 Edward O. Pearson, Fulton, for appellant.
Roy O. Parker, Roy O. Parker & Associates, Tupelo, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Once again we see the sad spectacle of a family rent asunder, its members in bitter battle over a loved one's modest estate, and to what sensible end? Here it is a grandmother against her six grandchildren; the deceased, the grandmother's older sister. The grandmother claims under will substitutes, the survivorship clauses on three certificates of deposit. The grandchildren claim under the will, arguing that the funds represented by the CDs are a part of decedent's estate.
The Chancery Court held for the grandchildren but on grounds that do not pass legal muster. Because that Court did not adjudge the grandchildren's claim that their grandmother unduly influenced her older sister and thus abused a confidential and fiduciary relationship with her, we *238 must remand for further proceedings, as will presently appear.

II.

A.
Jetta Robison Bethay departed this life on January 28, 1985, in her eighty-eighth year, a citizen of Itawamba County, Mississippi. Immediately prior thereto, Bethay held an estate said to consist of a residence, various items of personal property, and an interest in certificates of deposit with the Bank of Mississippi reflecting funds which had by the time of trial grown to $43,276.95.
Bethay had made a Last Will and Testament dated September 29, 1983, leaving her entire estate, with an exception not relevant here,[1] to and for the benefit of her six grandnephews and grandnieces  three of each. The problem is that, beginning October 27, 1983  twenty-eight days after she made her will  Bethay began executing will substitutes, substantially eviscerating the plan of her will. These took the form of certificates of deposit Bethay purchased, reflecting that the funds represented thereby were owned by Bethay and her younger sister, Etma Robison Cooper, as joint tenants with right of survivorship. Cooper claimed these funds at her sister's death.
There can be no doubt that in her last year or so Bethay experienced difficulties frequently afflicting the elderly. She suffered arthritis. After several wrecks, she was forced to give up driving. She suffered cancer of the colon. Toward the end, she increasingly needed assistance in attending to her physical needs, and in the Fall of 1984, some several months before Bethay's death, her sister, Etma Cooper, and Cooper's husband moved into the house with Bethay to care for her.
Our concerns are Bethay's transactions at the bank. Documentary evidence reflects that as early as October 27, 1983, Bethay renewed a $15,000.00-plus Certificate of Deposit and had it placed in her name jointly with her sister. Covering this Certificate of Deposit and others subsequent, Bethay and Cooper executed will substitutes reflecting in relevant part:

JOINT ACCOUNT  PAYABLE TO EITHER OR SURVIVOR
The undersigned agree and declare that all funds now or hereafter deposited in this account are, and shall be, our joint property and owned by us as joint tenants with the right of survivorship, and not as tenants in common; and upon the death of either of us, any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon our heirs, next of kin, legatees, assigns, and personal representatives.
 /s/ Mrs. F.K. Bethay
 /s/ Etma R. Cooper

B.
Bethay's September, 1983, will named her sister, Etma Cooper, and Cooper's son, O.R. Cooper, as Co-Execut(rix/or),[2] and on November 7, 1986, they offered the will for probate in the Chancery Court of Itawamba County. It soon became apparent not much passed under the will if the survivorship clauses controlled the CDs, and, no doubt because of this, the six grandnieces  Mary Denise Cooper Wallace, Melinda Annette Cooper, and Angela Ione Cooper, and their three brothers, Timothy Allen Cooper, Orman Robison Cooper, II, and Leonard Kirk Cooper  filed their complaint, challenging the will substitutes on a variety of grounds.
The Chancery Court charted a narrow course and found that Bethay, during her *239 lifetime, took "certain Certificate of Deposit, savings and checking accounts" and placed them in joint accounts with her sister, Etma R. Cooper,
solely for the convenience of Jetta Robison Bethay without any intention by Jetta Robison Bethay of Etma R. Cooper having any rights of survivorship in said accounts.
The Court then held Cooper a fiduciary for her sister and ultimately trustee for her grandnieces and grandnephews. The Chancery Court's bottom line is that Bethay's entire estate passed under her will to her grandnieces and grandnephews, share and share alike.
Cooper now appeals to this Court.

III.
On appeal this Court will not reverse a Chancery Court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987); Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Gilchrist Machinery Co., Inc. v. Ross, 493 So.2d 1288, 1292 (Miss. 1986).
The errors we face are errors of law, and in such instances we proceed de novo. State of Mississippi By and Through Mississippi Ethics Commission v. Aseme, 583 So.2d 955, 957 (Miss. 1991); Mississippi State Tax Commission v. Moselle Fuel Company, 568 So.2d 720, 723 (Miss. 1990); Cole v. National Life Insurance Co., 549 So.2d 1301, 1303 (Miss. 1989); S & A Realty Co. v. Hilburn, 249 So.2d 379, 382 (Miss. 1971).
Notwithstanding our respect for and deference to the trial judge, on matters of law it is our job to get it right. That the trial judge may have come close is not good enough.
UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987).

IV.

A.
Without doubt, our law allows competent adults to use such will substitutes with effect and thereby avoid probate. See Miss. Code Ann. § 81-5-63 (1972) (joint accounts with right of survivorship); Smith v. Smith, 574 So.2d 644, 651 (Miss. 1990) ("inter vivos gift"); In re Will and Estate of Strange, 548 So.2d 1323, 1325 (Miss. 1989) ("joint accounts with survivorship provisions"); Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987) ("inter vivos gift"); see also, Restatement (Second) of Property: Donative Transfers § 32.4 and Comments and Notes thereto (Tent. Draft No. 12, March 28, 1989). We think of this when we think, over the course of the last fifteen months of her life, eighty-eight-year-old Jetta Robison Bethay executed with her five-years younger sister three writings, creating by their express terms joint tenancies with right of survivorship in certificates of deposit. These certificates evidenced deposits of funds Bethay had theretofore owned outright.
Nothing in our rules regarding inter vivos gifts precludes giving these clauses full effect. See, e.g., Matter of Estate of Holloway, 515 So.2d 1217, 1223 (Miss. 1987); Ross v. Brasell, 511 So.2d 492, 496 (Miss. 1987); Carter v. State Mutual Federal Savings and Loan Association, 498 So.2d 324, 327 (Miss. 1986); In re Collier, 381 So.2d 1338, 1340 (Miss. 1980); Stephens v. Stephens, 193 Miss. 98, 101-02, 8 So.2d 462, 463 (1942). The key is to realize that Bethay's donees are the joint tenants, herself and Cooper, as their interests may appear. Today's instruments evidence "a gift in joint tenure," Leverette v. Ainsworth, 199 Miss. 652, 657, 23 So.2d 798, 799 (1945), and are enforceable as such. Estate of Strange, 548 So.2d at 1328; cf. Miss. Code Ann. § 89-1-7 (1972). They "may operate as a present and completed gift in joint ownership," Estate of Strange, 548 So.2d at 1327, quoting In re Lewis' Estate, 194 Miss. 480, 494-95, 13 So.2d 20, 25-26 (1943). They
create a right which embraces the essential elements of joint ownership and survivorship in respect to the particular ... deposit.
*240 Thomas v. Estate of Eubanks, 358 So.2d 709, 711 (Miss. 1978), quoting Leverette, 199 Miss. at 657, 23 So.2d at 799. Subject to what we say below, the rights of the parties are controlled by the instrument Bethay and Cooper executed and delivered to the bank, and it matters not whether we call that instrument a contract of deposit or a deed of gift, the formalistic distinction once recognized in Chippendale v. North Adams Savings Bank, 222 Mass. 499, 501-03, 111 N.E. 371, 373 (1916), to the contrary notwithstanding. See Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817 (1950); and Connor v. Temm, 270 S.W.2d 541 (Mo. App. 1954).
We search for intent, but when we search for intent we accept that the law directs our search and points first and foremost to the text the parties created. Matter of Estate of Anderson, 541 So.2d 423, 428 (Miss. 1989); Ford v. Hegwood, 485 So.2d 1044, 1046 (Miss. 1986). Common sense suggests the parties' writings the most reliable evidence of their intent. Common law directs that, where we find survivorship clauses in the name of the account itself, Weaver v. Mason, 228 So.2d 591, 593 (Miss. 1969), in the signature cards, Estate of Isaacson v. Isaacson, 508 So.2d 1131, 1134 (Miss. 1987), or in a joint account agreement, Stewart v. Barksdale, 216 Miss. 760, 762, 63 So.2d 108, 109 (1953), we enforce them according to their tenor. R. Weems, Wills And Administration Of Estates In Mississippi § 2-56 (Supp. 1990).
The language to which Bethay and Cooper bound themselves, together with the bank, is without ambiguity. It declares the funds represented by the CDs held by them as joint tenants with right of survivorship. This distinguishes today's case from our many past struggles with much less precise language, but even so we have never given cause for doubt that we will enforce express survivorship clauses. Matter of Estate of Holloway, 515 So.2d 1217, 1222 (Miss. 1987); In re Estate of Isaacson, 508 So.2d 1131, 1134 (Miss. 1987); Thomas v. Estate of Eubanks, 358 So.2d 709, 710 (Miss. 1978); Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947); Stephens v. Stephens, 193 Miss. 98, 8 So.2d 462, 463 (1942). And if there were doubt, which there is not, the Legislature in 1988 has enacted a presumption in the case of deposits in the name of two or more persons payable, as here, to any one of such persons or the survivor.[3] The statute provides, in the case of litigation in which a survivor is a party,
a presumption ... of the intention of all the persons named on the deposit to vest title to the deposit and the additions thereto ... in the survivor or survivors.
Miss. Code Ann. § 81-5-63 (Supp. 1990). It is common knowledge that this statute was amended in 1988 to modify the view we had taken a few months before in Matter of Estate of Holloway, where we had held former Section 81-5-63 did not apply to certificates of deposit, in the face of failure to satisfy traditional formalities regarding inter vivos gifts. But even there our view was conditioned upon "[a]bsen[ce of] expressed survivorship provisions." Estate of Holloway, 515 So.2d at 1222. For present purposes, Section 81-5-63's enhanced presumption[4] means nothing more *241 than that the language of the survivorship clauses means what it says and is enforceable as such. We would say the same had the Legislature not touched the statute. Cooper's claim must prevail unless there be something before us having in law power to eviscerate the will substitutes.

B.
Cooper's claim under these writings evokes another familiar rule of evidence. Where the language of a legal text is without gross ambiguity, neither parol testimony nor other extrinsic evidence are admissible to show meaning. The rule proceeds from common sense premises, here, that resurrecting the mind of the deceased and deciphering its thoughts four years after the fact is an enterprise fraught with hazard and not just because it is pursued by the self-interested. Our lawmakers realized this long ago and devised more certain means of divining a donor's intent. Today's civil war between a grandmother and her grandchildren is no doubt the sort the lawmakers had in mind and illustrates the wisdom of their actions.
We spend so much of our time in search of intent that we often overlook that source of intent most credible de facto and legitimate de jure: the words of the text itself. See Matter of Estate of Anderson, 541 So.2d 423, 428 (Miss. 1989); Collins By Smith v. McMurry, 539 So.2d 127, 131 (Miss. 1989) (quoting Seal v. Seal, 312 So.2d 19, 21 (Miss. 1975)); UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987); Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss. 1987). With contracts and wills, legal purpose or intent should first be sought in an objective reading of the words employed, Estate of Anderson, 541 So.2d at 428; Cherry, 501 So.2d at 419, to the exclusion of parol or extrinsic evidence. Courts are not at liberty to infer an intent contrary to that emanating from the text at issue. Johnson v. Board of Trustees of Mississippi Annual Conference of United Methodist Church, 492 So.2d 269, 276 (Miss. 1986).
We call the rule so forged the parol evidence rule, but it is more than a rule of evidence at all. It is foremost a rule that prescribes conditions for the exercise of powers other law confers upon our people, and it is alive and well in Mississippi. Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber Supply Company, Inc., 584 So.2d 1254, 1257 (Miss. 1991); Sullivan v. Estate of Eason, 558 So.2d 830, 832 (Miss. 1990) (contract); Ross v. Brasell, 511 So.2d 492, 495 (Miss. 1987) (will); Smith v. Falke, 474 So.2d 1044, 1046 (Miss. 1985) (contract). Parol evidence may not impeach an express survivorship clause, and any contrary intimation in Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947), may be safely branded error. Missouri particularly enforces a like rule in today's context. See, e.g., Commerce Trust Co. v. Watts, 360 Mo. at 979-80, 231 S.W.2d at 821-22; Connor v. Temm, 270 S.W.2d at 545-47; see also, Simonich v. Wilt, 197 Kan. 417, 424-25, 417 P.2d 139, 145 (1966); Restatement (Second) of Property: Donative Transfers, § 32.4, Reporter's Note 4(b) (Tent. Draft No. 12, March 28, 1989).
The Chancery Court ignored the unequivocal language of the will substitutes and instead relied upon parol evidence to find that Bethay had used the joint account device as a matter of convenience, to allow her younger sister to handle her financial affairs and without intent to part with ownership or create any right of survivorship. The record certainly does contain evidence that Bethay created the joint accounts as a matter of convenience to enable her younger sister to handle her financial affairs. Cooper freely acknowledges the fact, but this is in no way inconsistent with the unequivocal language of the will substitutes which at once create the joint tenancy with right of survivorship. The grandnieces and grandnephews' parol evidence does *242 not in fact eviscerate the survivorship instruments, nor could it in law.
The grandnephews and grandnieces point to the will of September 28, 1983, but without effect. That will, in and of itself, is wholly incapable of supplanting in law the later executed joint tenancy instruments. In re Will and Estate of Strange, 548 So.2d 1323, 1326 (Miss. 1989). The will removed, the grandnieces and grandnephews are reduced to arguing their anecdotal and conclusory testimony that their grandaunt preferred her estate to go to them. As a matter of law, this evidence is irrelevant and that it was received without objection avails them nothing.
The Chancery Court erred as a matter of law when it failed to enforce the parol evidence rule. More substantively, the Court erred when it relied on parol or extrinsic evidence to give the will substitutes a meaning their words will not bear. See Magnetic Copy Services, Inc. v. Seismic Specialists, Inc., 805 P.2d 1161, 1164 (Colo. App. 1990); J. Calamari & J. Perillo, Law of Contracts § 3-2(d) at 140 (3d Ed. 1987); 3 A. Corbin, The Law of Contracts § 573 (1960).

V.
Conspicuously absent is any finding that Bethay was incompetent to make the several will substitutes in October, 1983, June, 1984, or October, 1984. The grandnieces and grandnephews do not seriously contend otherwise, no doubt recognizing that any such claim might embarrass their view that Bethay was competent when she made her will on September 27, 1983. Given this, the will substitutes are effective according to their tenor, save only there be proof of forgery, fraud, duress or undue influence. The grandnieces and grandnephews struggle mightily to this latter end and produce much evidence, anecdotal and conclusory, practically none of which has to do with the fact questions at issue. It does not matter, as Bethay and Cooper argue, that Cooper did in fact handle the financial affairs of her sister in the latter's later years, and the like. What is important is whether, at the time Bethay signed the several will substitutes, there is evidence of fraud, duress, overreaching or undue influence.
We accept without hesitation that Bethay relied upon and trusted Cooper to the extent that, by operation of law, a fiduciary or confidential relationship arose. The Chancery Court's finding that a fiduciary relationship existed here is supported by substantial evidence and may not be disturbed, but that fact standing alone does not sink Cooper's case. An inter vivos transfer among family members is a perfectly permissible mode of conveyance, even when done in the present form and used as a will substitute. See, e.g., Mullins v. Ratcliff, 515 So.2d 1183, 1190, 1192 (Miss. 1987); Ross v. Brasell, 511 So.2d 492, 496 (Miss. 1987); Matter of Collier, 381 So.2d 1338, 1341 (Miss. 1980). This is but an oft-taken-for-granted incident of our legally created institution of private property with its attendant notions that an owner may use or convey largely as he sees fit, save only for a few exceptions not before us today. See, e.g., Gray v. Baker, 485 So.2d 306, 308 (Miss. 1986); Andrews v. Lake Serene Property Owners Association, 434 So.2d 1328, 1331 (Miss. 1983). In circumstances such as these, one such as Cooper must have done something which abused her position and actively influenced the procurement, preparation or execution of the conveyance at issue. Matter of Will of Adams, 529 So.2d 611 (Miss. 1988); Lee v. Estate of Polk, 497 So.2d 815 (Miss. 1986), and a careful reading of Miner v. Bertasi, 530 So.2d 168, 171 (Miss. 1988), reveals nothing to the contrary.
What is less than clear is whether Cooper did anything that may be construed to have abused that confidential relationship. The evidence suggests that one day Bethay called her younger sister and asked to be driven to the Bank of Mississippi, that Cooper in fact drove Bethay to the bank, where she met with Gary Walker, president of the bank, and after a conference, executed the documents creating the joint tenancies with right of survivorship. We are not clear that Cooper did anything in connection with this first meeting other than drive Bethay to the bank and sit in on the meeting with *243 Walker. The evidence further reflects through Rudine Senter, then vice president and now president of the bank, that on at least one other occasion Cooper brought her sister to the bank, that joint tenancy/right of survivorship forms were signed, and that Senter explained to Bethay the meaning and import of same.
In their brief before this Court, the grandnephews and grandnieces do not seriously dispute any of this. Rather, in their effort to save the judgment below, they seize upon the Chancery Court's finding that "Etma R. Cooper was a fiduciary for Jetta Robison Bethay," and argue that Cooper is thus saddled with a presumption of undue influence in Bethay's establishing the joint tenancy deposit which, we are told, Cooper failed to rebut by clear and convincing evidence. The grandnieces and grandnephews then devote the rest of their brief to a consideration of our undue influence cases with emphasis on our scope of review.
Where one so situated has been active and influential in this special way, the law presumes, rebuttably, that the conveyance was the product of undue influence and holds that the conveyance must fail unless the fiduciary convinces the trier of fact, by clear and convincing evidence, that under the totality of the circumstances undue influence was not the procuring cause. Our cases direct the trier of fact to three familiar inquiries: (1) the good faith of the grantee/beneficiary; (2) the grantor's full knowledge and deliberation of her actions and their consequences; (3) the grantor's independent consent and action. Mullins v. Ratcliff, 515 So.2d 1183, 1193-94 (Miss. 1987), modifying Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984); Blissard v. White, 515 So.2d 1196 (Miss. 1987). See further, Vega v. Estate of Mullen, 583 So.2d 1259, 1263 (Miss. 1991); Smith v. Smith, 574 So.2d 644, 651 (Miss. 1990); Marsalis v. Lehman, 566 So.2d 217, 219 (Miss. 1990); In re Estate of Harris, 539 So.2d 1040, 1042 (Miss. 1989); Miner v. Bertasi, 530 So.2d at 171-172. We have emphasized repeatedly that these "tests" are but an indicia of our true quest: whether the conveyance was procured by undue influence, and have admonished that they
should not be understood as entirely separate and independent requirements that ought be rigidly exacted in every case. Undue influence is a practical, non-technical conception, a common sense notion of human behavior.
Mullins, 515 So.2d at 1194; quoted in Matter of Estate of Haney, 516 So.2d 1359, 1361 (Miss. 1987). As helpful as these factors are
common sense counsels against rigid, inflexible multi-part tests, particularly as the parties our law saddles with proof of the negatives are laymen, not legal technicians.
Mullins, 515 So.2d at 1194; see also, Vega v. Estate of Mullen, supra.
These things before us, and our scope of review well in mind, we have carefully studied and reviewed the Chancery Court's final judgment of November 18, 1989. Our concern is that we find no indication that the Court considered the undue influence issue. Rather, it is clear from the tenor of the judgment that the Court held the funds a part of the estate, not because Etma R. Cooper had failed to rebut the presumption of undue influence, but because Bethay put Cooper's name on the certificates of deposit and bank accounts "solely for the convenience of Jetta Robison Bethay without any intention ... of Etma R. Cooper having any rights of survivorship in said accounts." We have held this part of the Court's decision erroneous as a matter of law. Because the subject of undue influence and the possible rebuttal of the presumption are not even mentioned, this is not a case where we may imply findings consistent with the decree. See Riddle v. State, 580 So.2d 1195, 1200 (Miss. 1991); Schmitt v. State, 560 So.2d 148, 151 (Miss. 1990); Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236, 238 (Miss. 1987); Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987). The grandnieces and grandnephews pleaded and sought to prove undue influence. The problem is that the Court below failed to adjudge the claim.

VI.
In sum, we hold that the several instruments executed beginning October 27, 1983, were, on their face, legally effective *244 to create a joint tenancy in Jetta Robison Bethay and Etma R. Cooper with right of survivorship according to the tenor of each such instrument. The Court erred when it considered parol or extrinsic evidence to vary the terms of the survivorship clauses. Because the Court has found that Cooper occupied a fiduciary relationship toward her older sister, we must proceed further. The grandnieces and grandnephews are entitled to a full adjudication of their claim of undue influence. We vacate the judgment below, insofar as it finally adjudges rights in the instruments at issue and insofar as it awards attorneys' fees to the grandnieces and grandnephews, and remand this case for further proceedings not inconsistent with this opinion, with the usual caveat that nothing said here should be taken as implying any view how the matter ought ultimately be decided.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
NOTES
[1] O.R. Cooper, Bethay's nephew, on September 15, 1987, disclaimed and renounced any rights he might have under the will, and he has since died.
[2] By reason of the disputes that have arisen, the Court removed Etma Cooper and O.R. Cooper and appointed Clifford Crabb, Jr., Executor De Bonis Non. Executor Crabb qualified on September 29, 1988.
[3] Code Ann. § 81-5-63 (1972) addresses deposits made in the name of two or more persons and of deceased persons. It provides in part:
When a deposit has been made or shall hereafter be made in the name of two (2) or more persons, payable to any one (1) of such persons, or payable to any one (1) of such persons or the survivor, or payable to any one (1) of such persons or to the survivor or survivors, or payable to the persons as joint tenants, such deposit or any part thereof or interest or dividends thereon may be paid to any one (1) of the said persons, without liability, whether one or more of said persons be living or not, and the receipt of acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. The making of a deposit in such form, or the making of additions thereto, shall create a presumption in any action or proceeding to which either the bank or any survivor is a party of the intention of all the persons named on the deposit to vest title to the deposit and the additions thereto and all interest or dividends thereon in the survivor or survivors.
[4] Section 81-5-63's 1988 amendment states in part a rule of evidence enforceable in all cases tried after it became effective. See Miss. Laws, ch. 484 (1988), effective April 27, 1988. Notwithstanding, we pretermit the question whether the amended statute may give a pre-1988 writing covering a deposit a meaning or effect not fairly contemplated by the maker by reference to the law existing at the time he or she made the writing.