## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00739-SCT

*IN THE MATTER OF THE LAST WILL AND TESTAMENT AND ESTATE OF MAMIE WARNACK DUNN, DECEASED:*

*TANA HARWOOD FORD AND VIRGINIA CRIST*

*v.*

*SARA W. REILLY, INDIVIDUALLY AND AS EXECUTRIX*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2000 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN, JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | FRANK J. CAMPBELL |
| ATTORNEY FOR APPELLEE: | MICHAEL MADISON TAYLOR |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED- 05/03/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/24/2001 |

**BEFORE BANKS, P.J., SMITH AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Mamie Warnack Dunn died testate owning three disputed certificates of deposit, with Sara W. Reilly listed as joint owner. Tana Harwood Ford and Virginia Harwood Crist, heirs under Dunn's will, contested the petition to close Dunn's estate, arguing that pursuant to Dunn's last will and testament, they were jointly entitled to fifty percent of the three disputed certificates of deposit. The Lincoln County Chancery Court ruled that pursuant to Miss. Code Ann. § 81-5-63 (1996), Reilly alone took the three disputed certificates of deposit by right of survivorship and closed the estate. Feeling aggrieved, Ford and Crist appeal, raising the following issues:

> **I. WHETHER THE TRIAL COURT ERRED IN CONCLUDING SUFFICIENT EVIDENCE EXISTED TO ESTABLISH PROOF OF DUNN'S INTENT TO MAKE REILLY A JOINT TENANT WITH RIGHTS OF SURVIVORSHIP?**
>
> **II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING PAROL EVIDENCE?**
>
> **III. WHETHER THE TRIAL COURT ERRED IN FINDING NO PROOF OF UNDUE INFLUENCE WAS EXERTED OVER DUNN?**
>
> **IV. WHETHER THE TRIAL COURT ERRED IN FINDING REILLY PRESENTED SUFFICIENT EVIDENCE TO OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE?**
>
> **V. WHETHER THE TRIAL COURT ERRED IN FINDING EVIDENCE THAT DUNN**

**FULLY UNDERSTOOD AND APPRECIATED THE CONSEQUENCES OF LISTING REILLY AS A JOINT OWNER ON A CERTIFICATE OF DEPOSIT?**

**VI. WHETHER THE TRIAL COURT ERRED IN FAILING TO REQUIRE REILLY TO REPAY FUNDS SHE MISAPPROPRIATED FOR PERSONAL USE?**

## FACTS AND PROCEEDINGS BELOW

¶2. This is an appeal from an estate proceeding involving a will, certificates of deposit and checking accounts. Sara W. Reilly, decedent Mamie Dunn's sole executrix, filed a Petition to Close Estate seeking confirmation of and distribution of certain property and accounts, to-wit:

　　1. Distribution of certain savings bonds to Virginia Crist and Tana Ford, appellants;

　　2. Distribution of certain savings bounds to David McCullough;

　　3. Distribution of certain savings bonds to Karen McCuller;

　　4. A declaration that Elizabeth Dunn McCuller is the owner of certain real property in Attala County; and

　　5. That Sara Reilly is the owner of certain certificates of deposit and bank accounts and these accounts are not part of Mamie Dunn's estate, but pass by operation of law.

¶3. Mamie Dunn died on March 24, 1999, at the age of 106. Dunn left a will leaving certain gifts as outlined above. At the time of her death, Dunn was the co-owner of three certificates of deposit and two bank accounts with her great-niece, Sara Reilly. Crist and Ford answered the Petition to Close Estate and alleged that the survivorship provisions of the various certificates of deposit and bank accounts were not valid, claiming undue influence and a lack of donative intent on the part of Dunn to pass these certificates outside of her will.

¶4. A brief history of the relevant facts is necessary to explain how Reilly came to be a co-owner of the disputed certificates of deposit. Due to her declining health and advanced age, in the early-1980s, Dunn was placed in a Brookhaven nursing home. In order to pay her bills and handle her financial affairs, Dunn opened a joint checking account in her name, that of her nephew and her niece. Dunn's nephew, Henry Warnack, is the father of Reilly, and Dunn's niece, Kathleen Harwood, is the mother of Crist and Ford. Through a power of attorney, Dunn designated her niece Kathleen as her attorney in fact.

¶5. In early 1991, Henry Warnack died, and Harold Harwood (Crist's and Ford's father; niece Kathleen's husband) was placed on Dunn's checking account, along with Kathleen. A short time later, Kathleen died, and Harold Harwood added Sara Reilly's name to the joint checking account. Following Henry and Kathleen's death, it is undisputed that Harold Harwood, acting as Dunn's attorney under a power of attorney, handled all of Dunn's business affairs until his death in 1998. Following Harold's death on June 2, 1998, a durable power of attorney was issued to Reilly on June 27, 1998.

¶6. On April 16, 1991, Harold made arrangements to take Dunn to execute her will. According to terms of the will, Dunn bequeathed her property (other than certain real estate) as follows: one-half to Sara and one-half to Harold, and if Harold predeceased Dunn, than one-fourth to Crist and one-fourth to Ford. At the

time of execution of Dunn's will, Reilly's name only appeared on one checking account and one certificate of deposit in the amount of $59,000.

¶7. As stipulated by the parties, shortly after Dunn's will was executed, Harold purchased three certificates of deposit, listed in the names of Mamie Dunn or Harold Harwood or Sara Reilly. The date and amount of each certificate are as follow: 1). November 18, 1994 - $76,691.58; 2). March 31, 1993 - $59,000[1]; and 3). July 14, 1998 - $30,000. Reilly testified, and no evidence was offered to the contrary, that she played no role in procuring the certificates of deposit, or in placing her name on any of Dunn's bank accounts. What is disputed by the parties is whether Harold, acting as Dunn's attorney under a power of attorney, purchased these certificates of deposit with Dunn's knowledge and consent. However, undisputed is the fact that Dunn, at various times during her life, made gifts to family members by making them survivor beneficiaries of instruments. In fact, Crist and Ford were recipients of savings bonds containing survivorship provisions.

¶8. In addition to the three disputed certificates of deposit, two bank accounts are at issue: 1). a Trustmark National Bank Prime Yield account worth $21,494.83 as of February 28, 1999 and 2). a Trustmark Prime of Life checking account in the sum of $2,045.53 as of February 23, 1999.

¶9. Reilly testified that she first became aware that she was a co-owner of these certificates of deposit (CD's) around December of 1996, when Harold instructed her to cash in a matured CD,[2] worth approximately $48,000. Of this, Reilly admitted using approximately $13,000 to purchase herself a reliable vehicle, and approximately $14,000 to pay-off the loan on her house, but only at the direction of Harold. Reilly testified that, as instructed by Harold, she deposited the remaining $20,000 into her bank account, holding it for Harold until he returned from a trip. At trial, Reilly produced a canceled check revealing that she had in fact turned over the excess funds to Harold. Reilly was unable to testify as to what Harold did with these funds.

¶10. At the conclusion of the trial, the Chancellor found that all three of the CD's and the Trustmark Prime of Life checking account in the sum of $2,045.53 to be the sole property of Reilly and not part of Dunn's estate. As for the Trustmark Prime Yield account worth $21,494.83, the Chancellor held that at the time the account was created, September 8, 1998, (three months after Reilly became Dunn's attorney under a durable power of attorney), a confidential fiduciary relationship existed between the two, thereby raising a presumption of undue influence, which Reilly failed to rebut by clear and convincing evidence. As such, the Chancellor found this account to be part of Dunn's estate, and directed that it be distributed as directed by Dunn's will; one-half to Reilly, one-fourth each to Crist and Ford.

## STANDARD OF REVIEW

¶11. On appeal, this Court will not reverse a chancery court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings. *Cooper v. Crabb,* 587 So. 2d 236, 239 (Miss. 1991) (collecting citations). We must consider the entire record before us and accept all those facts and reasonable inferences therefrom which support the chancellor's findings. *Madden v. Rhodes,* 626 So. 2d 608, 616 (Miss. 1993) (collecting citations). "Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based on substantial evidence, the court be manifestly wrong." *Mullins v. Ratcliff,* 515 So. 2d 1183, 1189 (Miss. 1987) (collecting citations).

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN CONCLUDING SUFFICIENT EVIDENCE EXISTED TO ESTABLISH PROOF OF DUNN'S INTENT TO MAKE REILLY A JOINT TENANT WITH RIGHTS OF SURVIVORSHIP?

¶12. Crist and Ford attack the lack of donative intent on behalf of Dunn to make Reilly a joint tenant with rights of survivorship. Essentially, Crist and Ford argue that the changes to the CD's adding Reilly were made by Harold Harwood, acting pursuant to his power of attorney, and not by Dunn herself. Crist and Ford argue that the burden of proof with gifts inter vivos rests on the donee (Reilly) to prove by clear and convincing evidence that the gift is free from the taint of undue influence. *See **Madden**,* 626 So. 2d at 618. However, ***Madden*** was written in the context where a donor and donee share a confidential relationship. *See **id.*** at 619. Such was not established here until several years after the three certificates of deposit were amended to name Reilly as a co-owner.

¶13. Undisputed is the fact that Harold placed Reilly's name on the three CD's as well as Dunn's checking account. No argument is made that Reilly and Harold shared a confidential relationship. Although Crist and Ford allege that Dunn and Reilly shared a confidential relationship at the time Harold added Reilly's name as a joint tenant, they offer no evidence to support their allegation. "This Court has held in numerous cases that the burden of establishing the existence of a confidential relationship is upon the party asserting it." ***Norris v. Norris,*** 498 So. 2d 809, 813 (Miss. 1986). Because allegations such as the ones brought by Crist and Ford seek to declare void a facially valid instrument, the public interest requires a high level of confidence in any judicial determination that a confidential relationship exists. *See **id.***

¶14. Undisputed testimony in this record established that at the time the changes in the CD's and checking account were made, approximately April of 1991, Harold was Dunn's attorney in fact and handled all of Dunn's business matters. Additional testimony, not challenged by Crist and Ford, revealed that Reilly did not know her name had been added to any of these accounts until late 1996, when Harold instructed Reilly to cash in a CD and spend some of the proceeds on personal matters. Crist and Ford argue that as Dunn was over 100 years old, lived in a nursing home, was legally blind, hearing impaired, and physically disabled, and the fact that Reilly visited her frequently and helped to look after her needs, an automatic presumption of a confidential relationship should be inferred.

¶15. What Crist and Ford fail to appreciate is that the time for determining the existence of a confidential relationship between Dunn and Reilly is when Reilly was made a joint tenant with rights of survivorship. In other words, what is important is whether, at the time Reilly's name was added to the CD's and checking account, there existed any evidence of fraud, duress, overreaching or undue influence. *See **Cooper v. Crabb,*** 587 So. 2d at 242. The only evidence offered regarding Dunn's and Reilly's relationship in April of 1991 was that Reilly visited her great aunt every other weekend. As Crist and Ford offered no evidence that a confidential relationship existed when Reilly became a joint tenant with Dunn and Harold, we affirm the Chancellor's holding that none existed. Further, it appears that the Chancellor properly determined that, at the time the Trustmark Prime Yield account worth $21,494.83, was created, three months after Reilly became Dunn's attorney in fact under the durable power of attorney, a confidential fiduciary relationship existed between the two, thereby raising a presumption of undue influence, which Reilly failed to rebut by clear and convincing evidence.

¶16. The difficult issue to address is whether Harold, acting as Dunn's attorney in fact under a power of

attorney, acted within the scope of his power in making Reilly a co-owner to the disputed instruments. Regarding the scope of a person designated as another individual's power of attorney, Miss. Code Ann. § 87-3-7(2)(3) (1999) states:

> (2) If any power of attorney or other writing (a) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (b) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or deal with the principal's property, the attorney-in-fact or agent shall have the power and authority to make gifts in any amount of any of the principal's property to any individuals or to any organizations described in Sections 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both, in accordance with the principal's personal history of making or joining in the making of lifetime gifts.

> (3) Subsection (2) as set forth above is declaratory of past and present law in the State of Mississippi, and shall be applied to all powers of attorney, whether executed before, on or after March 16, 1999.

¶17. It is undisputed that from the time of his wife's death until his own, Harold was Dunn's attorney in fact under a power of attorney. Also undisputed is the fact that up until his death, Harold handled all of Dunn's business affairs. Section 87-3-7(2)(3) appears to infer the grantor's intent based on the good faith actions of a duly appointed attorney. As no evidence was presented to indicate that Harold and Reilly ever shared a confidential relationship while Harold acted as Dunn's attorney, nor any proof offered that Harold acted in bad faith, the Chancellor did not err in awarding the three CD's and checking account to Reilly.

**II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING PAROL EVIDENCE?**

**III. WHETHER THE TRIAL COURT ERRED IN FINDING NO PROOF OF UNDUE INFLUENCE WAS EXERTED OVER DUNN?**

**IV. WHETHER THE TRIAL COURT ERRED IN FINDING REILLY PRESENTED SUFFICIENT EVIDENCE TO OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE?**

**V. WHETHER THE TRIAL COURT ERRED IN FINDING EVIDENCE THAT DUNN FULLY UNDERSTOOD AND APPRECIATED THE CONSEQUENCES OF LISTING REILLY AS A JOINT OWNER ON A CERTIFICATE OF DEPOSIT?**

¶18. Crist and Ford agree that issues two through five require the admission of parol evidence to fully advance their position. For sake of convenience and clarity, these issues are combined into the single issue of whether the Chancellor erred in refusing to admit parol testimony.

¶19. The Chancellor ruled that as no confidential relationship existed between Reilly and Dunn, no presumption of undue influence was raised at the time the CD and checking accounts were amended to add Reilly's name, that the language on the face of the documents controlled, and that parol evidence was not admissible. Ford and Crist argue that the admission of parol evidence would have allowed them to prove undue influence, by overreaching, fraud and/or lack of donative intent.

¶20. As the record demonstrates, the disputed accounts were in the following names: Mamie W. Dunn or Harold L. Harwood or Sara W. Reilly.[3] We recently held, "[c]ommon law directs that, where we find

survivorship clauses in the name of the account itself, in the signature cards, or in a joint account agreement, we enforce them according to their tenor." ***Estate of Cannon,*** 733 So. 2d 245, 250 (Miss. 1999) (citations omitted). "Where the language of a legal text is without gross ambiguity, neither parol testimony nor other extrinsic evidence are admissible to show meaning." ***Cooper v. Crabb,*** 587 So. 2d at 241. "The general rule followed by this Court appears to be that 'where a joint tenancy account in a bank is made payable to either depositor or survivor, the account passes to the survivor upon death of the joint tenant.'" ***Estate of Huddleston,*** 755 So. 2d 435, 439 (Miss. Ct. App. 1999) (citing ***Strange v. Strange,*** 548 So. 2d 1323, 1327 (Miss. 1989)).

¶21. Again, Crist and Ford offered no evidence to support the existence of a confidential relationship at the time Harold added Reilly's name to the accounts. Although Crist and Ford argue that admission of parol evidence would allow them to prove fraud, undue influence and overreaching, it appears that their argument is again focused on proving lack of donative intent on behalf of Dunn to add Reilly as a co-owner. As this Court has made very clear, Miss. Code Ann. § 81-5-63 (1996) has been amended by the Legislature to state expressly the establishment of any such joint accounts creates an automatic presumption of "intent" to give ownership to the person or persons named on the account, whether living or as survivors. *See* ***Madden v. Rhodes,*** 626 So. 2d at 616. "Such presumptive title may be defeated, however, upon proof of forgery, fraud, duress, or an unrebutted presumption of undue influence." *See id.* at 617.

¶22. The proof offered by Crist and Ford fall short of the level we require to defeat the presumption of title once it vests in the survivor of a joint account. Parol evidence is not allowed to raise a presumption of undue influence, either by fraud, duress, or overreaching. Rather, Crist and Ford must first establish the existence of a confidential relationship, before a presumption of undue influence arises. *See* ***Murray v. Laird,*** 446 So. 2d 575, 578 (Miss. 1984) (citing ***Meek v. Perry,*** 36 Miss. 190 (1858)). Having previously determined that no confidential relationship existed at the time Reilly was added to Dunn's accounts, we hereby affirm the Chancellor's ruling that parol evidence was inadmissible.

### VI. WHETHER THE TRIAL COURT ERRED IN FAILING TO REQUIRE REILLY TO REPAY FUNDS SHE MISAPPROPRIATED FOR PERSONAL USE?

¶23. Crist and Ford requested that the Chancellor require Reilly to reimburse Dunn's estate the $28,000 she acquired upon cashing in one of Dunn's CDs.[4] Rather than ruling on the propriety of Reilly's cashing in this CD and expending some of the funds for personal matters, the learned Chancellor simply held, that this particular CD was set up by Harold Harwood to include Reilly as a co-owner. As such, the Chancellor determined that the money belonged to Reilly as the sole surviving joint tenant, was not a part of Dunn's estate, and that Crist and Ford were not entitled to any portion of those funds.

¶24. Having previously reached the conclusion that at the time Reilly was added to these accounts as a co-owner, no confidential relationship existed between Harold and Reilly, and as such, no presumption of undue influence arose, necessarily, the CD cashed in by Reilly, passed outside Dunn's estate, as did the other, existing accounts. We affirm the Chancellor's holding that the account passed outside of Dunn's estate.

### CONCLUSION

¶25. For the foregoing reasons, the chancery court's judgment is affirmed.

¶26. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR.**

1. This CD was issued on March 18, 1988, payable to Mamie Dunn or Kathleen Harwood, and set to mature on September 18, 1990. On April 10, 1991, a second CD was issued in lieu of the March 18, 1988, CD in the name of Mamie Dunn or Harold Harwood or Sara Reilly, with a maturity date of March 18, 1993. On March 3, 1993, the CD was stamped paid, and a third CD was issued in the amount of $59,000 to Mamie Dunn or Harold Harwood or Sara Reilly, with a maturity date of March 31, 1998.

2. Apparently this was a fourth CD. No other history of this CD was presented to the trial court other than the fact it was in the name of Mamie Dunn or Harold Harwood or Sara Reilly, and was worth $48,658.14.

3. Actually, two of the CD's matured after Reilly was appointed as Dunn's durable power of attorney. One of the CD's was cashed in on July 13, 1998, (shortly after Harold's death), with the money being used to purchase another CD, in the name of Mamie W. Dunn or Sara W. Reilly. The second CD matured about three months after Dunn's death. The proceeds from this CD were used to purchase another CD, in the name of Sara Reilly only.

4. Crist and Ford did not seek return of the approximate $20,000 their father Harold received from the cashed CD.