# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 00-60301
Summary Calendar

―――――――――

FIDELIA ALEXANDER, ETC., ET AL.,

Plaintiffs,

CLINTON ALEXANDER
AND
BENEFICIARIES OF THE BEBE ALEXANDER FAMILY TRUST,

Plaintiffs-Appellants,

VERSUS

UNION PLANTERS BANK,

Defendant-Appellee.

―――――――――――――

Appeal from the United States District Court
for the Northern District of Mississippi
(2:98-CV-128-B-B)

―――――――――――――

September 15, 2000

Before SMITH, BENAVIDES, and
DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

―――――――――――

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the
(continued...)

Clinton Alexander, *pro se*, appeals, for herself and as next-friend of her sister, Fidelia Alexander, a summary judgment declaring that a previous settlement agreement releases defendant Union Planters Bank from any liability for the matters being litigated in this suit. We affirm, concluding that the district court correctly held that the language of the settlement agreement unambiguously governs these issues, that there is no evidence of fraud or inequitable conduct, and that there was adequate consideration to form a valid contract.

### I.

Fidelia and Clinton Alexander were beneficiaries under the Bebe H. Alexander Family Trust, created by the will of their grandfather. His daughter, Bebe, and Clinton and Fidelia were beneficiaries.

Most of the payments from the trust were made to Bebe, but Fidelia and Clinton then requested that payments be made to them. The will provided that the bank as trustee, at its discretion, could make payments for such purposes. After considering Fidelia and Clinton's request, the bank denied them any payments, instead choosing to continue to pay the majority of the income to Bebe.

### II.

Fidelia and Clinton, *pro se*, sued the bank in state court, accusing it of various violations of its duty as trustee, including failing to sell the farm in 1980 when land prices were at a peak and violating the trust's terms by paying most of the income to Bebe. Fidelia and Clinton

---

*(...continued)
limited circumstances set forth in 5TH CIR. R. 47.5.4.

then dismissed so they could refile in another county.

Before plaintiffs refiled, the bank sued in yet a third county, seeking to resign as trustee, to have the rights of the beneficiaries of the trust determined, and to be discharged from further obligations under the trust. On the date of trial, the parties entered into a settlement agreement stating, *inter alia*, that "all claims now existing or alleged to exist among the parties in this case are released and discharged . . . ."

Fidelia and Clinton then filed the instant suit, seeking damages from the bank for breaches of fiduciary duties and fraudulent behavior with respect to the administration of the trust. They claim that the term "parties" in the 1996 settlement referred only to the beneficiaries of the trust and not to the bank, even though the bank was the plaintiff in that case. Plaintiffs argue that the fact that the bank interpreted the term "parties" to include it means there was no meeting of the minds. The bank disagrees, reasoning that the plain language of the settlement releases it from all liability that existed to Fidelia and Clinton as of the time of the settlement.

### III.

We review a summary judgment *de novo*. *See Rivers v. Central & S.W. Corp.*, 186 F.3d 681, 682 (5th Cir. 1999). The district court correctly determined that the language of the settlement unambiguously released all parties to that suit from any liability that existed among them at that time. It is hard to imagine how a global settlement could be much more plainly worded than "all claims now existing or alleged to exist among the parties in this case are released and discharged . . . ." This unambiguous language precludes us from going beyond the written words of the

settlement and delving into parole evidence of what the parties intended when they signed the agreement. *See Cooper v. Crabb*, 587 So. 2d 236, 241 (Miss. 1991).

Any party represented by competent counsel should have realized that this agreement would be interpreted to release the bank from all liability. It is undisputed, however, that Clinton and Fidelia Alexander made an honest mistake in thinking that the settlement agreement did not include the bank.[1] Unfortunately for them, no matter how sincere their mistaken belief was that the agreement did not release the bank from liability, "[a] unilateral mistake will not be the basis for upsetting a settlement unless there is some evidence of fraud, duress, overreaching,

etc." *Taylor v. Firestone Tire & Rubber Co.*, 519 So. 2d 436, 438 (Miss. 1988).

Although plaintiffs allege "sheer chicanery" and "bad faith and trickery" on the part of the bank's attorney, we find no evidence of fraud in the record. Indeed, the record shows that the settlement was negotiated by the lawyers for the two divided camps of beneficiaries, and there is no record of the attorney's making any representations at all as to the meaning of the settlement terms to either Clinton and Fidelia or their attorneys.

The bank's attorney was present in the courtroom and did sign the agreement, but there is no evidence whatsoever of fraud on his part. Plaintiffs' argument that he is guilty of bad faith and trickery is instead made in response to his taking the position that the set-tlement agreementSSwhich he signed in settlement of the case in which his client was the plaintiffSSapplied to his client.

Plaintiffs contend that the settlement could not include the bank because they were "specific in their instructions that no settlement agreement should bar their eventual claim against Union Planters for damages." Therefore, they argue, any interpretation of "parties" that includes Union Planters Bank is either erroneous or trickery.

Plaintiffs, however, have failed to allege to whom, if anyone, other than their attorneys, they gave these specific instructions. They further do not allege that the bank was aware of their desire to reserve the right to sue the bank for breach of its duties as trustee, or that the bank or its attorneys ever communicated anything to them about the meaning of the agreement. Therefore, the fact that the settlement agreement stated that it released all "parties in the case" cannot lead to recission of

---

[1] The undisputed evidence is that the sisters were both too ill to be in the courtroom and therefore had to have their attorneys relay the settlement negotiations to them in a separate room. Thus, the fact that they may have become confused as to the exact wording and intent of the settlement is somewhat understandable. More remarkable are the af_fidavits from the sisters' attorneys in which they seem to trumpet their own shortcomings. They state that when Wright signed the settlement agreement, they both believed that it did not release the Bank from any liability. They further state in their affidavitsSSwhich are identically wordedSSthat the Bank should have communicated more plainly that the settlement agreement released it from liability.

Had the ailing sisters been negotiating for them_selves we might consider the question of whether the Bank should have explained each ele-ment of the settlement agreement to them. But where, as here, clients are represented by supposedly competent counsel, we reject any argument that opposing counsel has a duty to make sure that each unambiguous part of an agreement is subjectively understood by both lawyer and client.

the contract on grounds that plaintiffs were fraudulently induced to make a unilateral mistake.

Plaintiffs alternatively aver that there was no consideration given by the bank in exchange for its release from liability. They argue that the bank agreed to do no more than fulfill its pre-existing duties as trustee, which cannot amount to consideration given in exchange for a promise to release it from liability. Plaintiffs do not recognize, however, that the bank dropped its suit seeking court approval to resign as trustee and to be discharged from further obligations under the trust. This consideration was sufficient to form a valid contract.

AFFIRMED.