758 So.2d 436 (1999)
In the Matter of the ESTATE OF Gilda Wilburn HART, Deceased, and Edsel Anthony Armstrong and Gwendolyn Elaine Chamberlain, Appellants,
v.
Lelar JAMES, Appellee.
No. 1998-CA-01417-COA.
Court of Appeals of Mississippi.
November 16, 1999.
Rehearing Denied February 29, 2000.
*437 Ray T. Price, Hattiesburg, Attorney for Appellants.
Nathan S. Farmer, Poplarville, Attorney for Appellee.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
THOMAS, J., FOR THE COURT:
¶ 1. The contestants, Edsel Anthony Armstrong and Gwendolyn Elaine Chamberlain, appeal the Pearl River County Chancery Court's decision allowing the decedent's will dated November 1, 1989 to be admitted to probate. The contestants assign the following issues of error for review.
I. THE CHANCELLOR ERRED IN FINDING THAT GILDA WILBURN HART POSSESSED THE REQUISITE TESTAMENTARY CAPACITY ON NOVEMBER 1, 1989.
II. THE COURT ERRED IN FINDING THAT A CONFIDENTIAL RELATIONSHIP DID NOT EXIST BETWEEN LELAR JAMES AND MRS. HART.
III. THE LOWER COURT ERRED IN ITS ALTERNATIVE HOLDING THAT, EVEN IF THE PRESUMPTION OF UNDUE INFLUENCE HAD ARISEN BY THE EXISTENCE OF A CONFIDENTIAL RELATIONSHIP, LELAR JAMES HAD REBUTTED THE PRESUMPTION BY CLEAR AND CONVINCING EVIDENCE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Gilda Wilburn Hart, an adult resident of Pearl River County, was married to Simon Hart. The marriage produced no offspring; however, during his marriage to Gilda, Simon fathered two children out of wedlock, the contestants, Edsel Anthony Armstrong and Gwendolyn Elaine Chamberlain. On September 21, 1976, Gilda and Simon executed reciprocal wills. Each will gave the survivor the other's share of the estate and gave the contestants the whole estate in the event the Harts died at the same time or when the survivor passed away. Simon Hart died on February 19, 1981, and pursuant to his will, Gilda Hart inherited his estate. On August 25, 1989, Gilda went to see her attorney to change her will, reducing the share to the contestants and giving the proponent, Lelar James, part of her estate. During this visit, Gilda made it clear that she wanted to change her will to leave some of her assets to Lelar James because James had been caring for her and tending to her needs, whereas the contestants had not visited in months. This will was prepared by Gilda's attorney, Martin Smith, and executed on November 1, 1989 in the presence of two witnesses. Gilda Hart had no living relatives. The proponent was the niece of Simon Hart, and the contestants were the children of Simon Hart. Thus, neither the proponent nor the contestants could inherit without a properly executed last will and testament of the decedent, Gilda Wilburn Hart.
¶ 4. The contestants object to the probate of decedent's will dated November 1, 1989 on the basis that the decedent lacked the requisite testamentary capacity to execute the will and that the will was the product of undue influence.

STANDARD OF REVIEW
¶ 5. The contestants argue that since the chancellor adopted verbatim the proposed findings of fact and conclusions of law of a party, the standard should be a de novo review of the record.
¶ 6. The proponent, however, maintains that a de novo standard of review should be applied only when the trial court commits error as a matter of law by adopting as the lower court's judgment the findings of fact and conclusions of law prepared by a prevailing party.
*438 ¶ 7. Ordinarily, this Court must affirm a finding of fact unless upon review of the record it becomes apparent that the trial court made a manifest error. UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., 525 So.2d 746, 754 (Miss.1987). However, where the trial court adopts verbatim findings of fact and conclusions of law prepared by a party to the litigation, this Court analyzes such findings with greater care. Omnibank of Mantee v. United Southern Bank, 607 So.2d 76, 83 (Miss.1992). Because in the case sub judice, the trial judge adopted verbatim the findings of fact and conclusions of law prepared by counsel for the appellee, the usual deference afforded such findings is lessened. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1266 (Miss.1987). Thus, we will uphold the lower court's findings only if supported by substantial credible evidence. Omnibank of Mantee, 607 So.2d at 82.

I.

TESTAMENTARY CAPACITY
¶ 8. At trial, the proponents carry the burden of proof, which they meet "by the offering and receipt into evidence of the will and the record of its probate. A prima facie case is made by the proponent solely by this proof." Harris v. Sellers, 446 So.2d 1012, 1014 (Miss.1984). After the proponents make a prima facie case, although the burden of proof remains on them, the burden of going forward with the proof of testamentary incapacity shifts to the contestants, who must overcome the prima facie case. Matter of Estate of Edwards, 520 So.2d 1370, 1373 (Miss.1988).
¶ 9. The contestants argue that the decedent did not understand what she was doing in regards to the will. The contestants further argue that the decedent did not understand the persons to receive her bounty because she forgot the names of her husband's children. They also maintain that the decedent was unable to determine the disposition of her property because she was unable to understand that the brick house could not be moved off the land. The contestants argue that the decedent succumbed to the power of suggestion exercised by Martin Smith, the decedent's attorney.
¶ 10. The decedent's attorney and the witnesses to the execution of the 1989 will testified that the decedent understood and appreciated that she was making a new will and that she was not suffering from any mental disease or defect. The proponent further maintains that it is clear from the recordings of the conversations between the decedent and her lawyer that the decedent clearly and adamantly wished to reduce the contestant's share and give the proponent part of her estate because the contestants had not concerned themselves with her needs and welfare, whereas the proponent was always helping and caring for her. The proponent also contends that the decedent was aware of what property she owned as well as to whom she wished to leave it.
¶ 11. This Court has consistently held that the test for determining whether one has the capacity to execute a will is "the ability of the testator at the time to understand and appreciate the nature and effect of his act, the natural objects or persons to receive his bounty, and their relation to him, and is capable of determining what disposition he desires to make of his property." Humes v. Krauss, 221 Miss. 301, 310, 72 So.2d 737, 739 (1954). Furthermore, it has long been held by the Mississippi Supreme Court "that the testimony of subscribing witnesses is entitled to greater weight than the testimony of witnesses who were not present at the time of the will's execution or did not see the testator on the day of the will's execution." Matter of Estate of Edwards, 520 So.2d at 1373.
¶ 12. In light of this test and the testimony presented by the contestants and the proponent, we hold that the chancellor was not in error in determining the decedent to have the required testamentary capacity. *439 Although Gilda may have been unable to recall the name of her husband's son, that does not indicate that she was unable to execute a will. An elderly person is allowed to have bouts of forgetfulness in recalling names or dates. Furthermore, it was apparent from the audiotapes that Gilda was aware of whom they were discussing, that she was just unable to recall his given name at the time. Additionally, being unable to instantaneously comprehend that a brick house cannot be moved does not prevent one from being able to execute a will. A testator does not have to have a certain level of intelligence before he can delineate how he wants his assets to be distributed upon his death. Gilda Hart initiated the drafting of her new will and was aware of the consequences and clearly desired the resulting outcome. Furthermore, the audiotapes clearly exemplified that Gilda was aware of her assets and that she wished to leave the majority of her assets to James and the remaining assets to her husband's children.

II.

CONFIDENTIAL RELATIONSHIP
¶ 13. A confidential relationship has been defined by the Mississippi Supreme Court as follows:
Whenever there is a relationship between two people in which one person is in a position to exercise dominant influence upon the other because of the latter's dependency upon the former, arising either from weakness of the mind or body, or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character.
Madden v. Rhodes, 626 So.2d 608, 617 (Miss.1993) (citing Hendricks v. James, 421 So.2d 1031, 1041 (Miss.1982)).
¶ 14. In other words, a confidential relationship exists when one has a dominant, overmastering influence over a person dependant upon him. Hendricks v. James, 421 So.2d 1031, 1041 (Miss.1982). The party asserting that a confidential relationship exists has the burden of establishing such a relationship by clear and convincing evidence. Whitworth v. Kines, 604 So.2d 225, 230 (Miss.1992) (citing Mullins v. Ratcliff, 515 So.2d 1183, 1192 (Miss. 1987)).
¶ 15. Although the record reflects that Mrs. Hart relied on James for transportation and assistance around the house, the existence of a dominant influence was not supported by evidence. Needing assistance with household chores and running errands is not equivalent to being dependant upon someone. Furthermore, helping someone do these things does not by itself signify the exertion of a dominant influence. Without more, we must affirm the lower courts finding that no confidential relationship existed between Mrs. Hart, the decedent, and Lelar James, the proponent.

III.

UNDUE INFLUENCE
¶ 16. In light of our finding that Gilda Hart had the requisite testamentary capacity to execute the 1989 will and that a confidential relationship did not exist, we need not address the issue of undue influence.

CONCLUSION
¶ 17. Based on the facts in this case we hold that the contestants have not met their burden of proof by a clear and convincing evidence that a confidential relationship existed between the proponent and Mrs. Hart or that Mrs. Hart lacked testamentary capacity to execute a valid will. Therefore, the judgment of the trial court admitting Gilda Hart's November 1, 1989 will to probate is affirmed.
¶ 18. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*440 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, AND PAYNE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.