**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 2000-CA-01741-SCT**

*RODNEY FOSTER AND DANNY L. LOWREY*

*v.*

*TONY ROSS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2000 |
| TRIAL JUDGE: | HON. RAY HILLMAN MONTGOMERY |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | DANNY L. LOWREY |
| ATTORNEY FOR APPELLEE: | JAMES E. PRICE, JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 01/10/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/31/2002 |

**BEFORE PITTMAN, C.J., SMITH, P.J. AND WALLER, J.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Rodney Foster filed this action in the Chancery Court of Alcorn County seeking a mandatory injunction requiring Tony Ross, Foster's uncle, to return to the Estate of Nannie Mae Ross the proceeds of three certificates of deposit. At the conclusion of Foster's case, the chancery court dismissed the action pursuant to Miss. R. Civ. P. 41(b). The court also found Foster and his attorney, Danny L. Lowrey, jointly and severally liable for attorney's fees and costs pursuant to Miss. Code Ann. §§ 11-55-1 et seq. (Supp. 2001). Aggrieved, Foster appeals to this Court. Foster does not appeal the trial court's dismissal of this action, but rather, the sole question presented to this Court is whether the trial court erred in holding Foster and his attorney jointly and severally liable for attorney's fees and costs.

**FACTS**

¶2. At issue in this case are three certificates of deposit with a total value of $88,415.50. At the time of Nannie Mae Ross's death on March 25, 1998, the CD's were owned by Nannie Mae Ross (Nannie Mae) and her son, Tony Ross (Tony), as joint tenants with right of survivorship. Nannie Mae's grandson, Rodney Foster (Foster), filed this action on August 7, 1998, in the Chancery Court of Alcorn County, Mississippi. In his complaint, Foster alleged that Tony had exerted undue influence on Nannie Mae, and requested that the court enter a mandatory injunction requiring Tony to return the proceeds from the CD's to Nannie Mae's estate.[1] At the hearing before Special Chancellor Ray H. Montgomery on May 8, 2000, the only testimony was that of Foster and Tony. The facts testified to are as follows. Nannie Mae Ross had three children: Wiley A. Ross, who is deceased and has no children; Maxine Morris (Maxine), also deceased; and Tony Ross, the appellee. Foster is the son of Maxine. After the death of Nannie Mae's husband more than thirty years ago, Maxine moved in with Nannie Mae. During this time, Foster resided in Ohio, and Tony resided in Indiana. In 1991, during the period in which Maxine lived with Nannie Mae, two certificates of deposit were issued by Deposit Guaranty National Bank payable to Nannie Mae and Maxine

as joint tenants with right of survivorship. Maxine continued to live with Nannie Mae until Maxine's death on December 20, 1997.

¶3. After Maxine's death, Tony returned to Alcorn County to live with Nannie Mae until Nannie Mae's death on March 25, 1998. During this period, Tony performed various household chores, ran errands for Nannie Mae, and drove her to the doctor. Tony was assisted by his wife and his ex-wife. Nannie Mae, approximately ninety-six years old at the time, used a walker and could not drive a car. She was allergic to penicillin, and a home health nurse came by the house to check on her periodically. Tony testified that Nannie Mae remained independent and that, though he felt she trusted him, she never discussed her business with him. Tony testified that he did not inquire into his mother's business.

¶4. Tony testified that on January 6, 1998, he went to Deposit Guaranty National Bank (the Bank) to speak with a bank employee regarding his ability to write checks on Nannie Mae's account for her utilities, groceries, and the like. The bank employee informed Tony that his name was already on Nannie Mae's account. Tony testified that though he began writing checks from the account, he did not take the checking responsibilities away from Nannie Mae. He stated that she continued to write checks as well and that she was fully competent to do so.

¶5. Also on January 6, 1998, the Bank issued Certificate of Deposit Number 156879, in the amount of $35,513.16, payable to Nannie Mae and Tony, as joint tenants with the right of survivorship. The parties stipulated that this CD represented a transfer of funds from a savings account on which the names of Nannie Mae, Maxine, and Tony appeared. The three held the account as joint tenants with right of survivorship.[2] Again, Tony testified that he was not aware prior to this date that his name was on any of Nannie Mae's accounts. He testified that he had the bank transfer the funds from the savings account into the CD because of the higher interest rate offered on the CD.

¶6. Shortly after this CD was issued, Nannie Mae lost the CD. On January 15, 1998, Tony drove Nannie Mae to the Bank because Nannie Mae asked him to do so. The Bank executed a stop payment order on the lost CD and, to replace the CD, issued CD Number 156906 in the amount of $35,513.16 to Nannie Mae and Tony as joint tenants with the right of survivorship.

¶7. Foster asserts in his brief that as soon as he was made aware that this CD represented funds from a savings account of which Tony was joint owner, he effectively abandoned his claim to this CD. Foster states that he made counsel for the Appellee aware that he had abandoned a claim to this certificate prior to the hearing before the chancery court, but no such communication exists in the record. Foster states that he "was candid" with the chancellor about the abandonment of this claim in his proposed findings of fact and conclusions of law submitted to the chancery court. There is no mention, however, in the record, that Foster notified the chancellor that he had abandoned this claim prior to the hearing or attempted to amend his complaint. In fact, in his opening statements to the chancery court at the hearing on this matter, Foster's attorney again stated that this CD, along with two others, should be declared as belonging to the estate.

¶8. Also on January 15, 1998, the Bank issued CD Number 156904 in the amount of $15,428.22 and CD Number 156905 in the amount of $37,049.71. Both were made payable to Nannie Mae and Tony as joint tenants with right of survivorship. These two CD's replaced the two older CD's which had been payable to Nannie Mae and Maxine as joint tenants with right of survivorship. Tony testified that he did not know Nannie Mae owned the CD's which had been payable to Nannie Mae and Maxine, and also stated that he did not know they had been reissued in his name until after Nannie Mae's death.[3] Tony stated that at the

time these certificates were issued, Nannie Mae was alone with the bank employee, and he was in another part of the bank. Tony testified that his mother liked to conduct her own business. He characterized her as "fiercely independent."

¶9. Nannie Mae died on March 25, 1998. Tony testified that he found the CD's in the safe deposit box after Nannie Mae's death and that he subsequently cashed in the CD's.

¶10. Foster offered no evidence to rebut Tony's testimony. He too testified that Nannie Mae was independent and strong willed and that she preferred to conduct her own business affairs. He testified that when he visited Alcorn County during the period in which Tony lived with Nannie Mae, Tony would not permit Foster or members of Foster's family to be alone with Nannie Mae. Foster did not call Patricia Nelson, the bank employee who assisted Nannie Mae in issuing the CD's.

¶11. At the close of Foster's case, the chancellor granted the defense's motion for dismissal pursuant to Miss. R. Civ. P. 41(b). On May 8, 2000, Ross filed a motion requesting attorney's fees and costs pursuant to the Litigation Accountability Act, Miss. Code Ann. §§ 11-55-1 et seq., on the ground that the action was brought without substantial justification. A hearing was held on August 14, 2000, regarding the motion. On September 7, 2000, the chancellor entered his opinion. He found that Foster failed to establish by clear and convincing evidence (or any other evidence, for that matter) a confidential relationship between Nannie Mae and Tony. The chancellor concluded that Tony was entitled to receive the proceeds of the certificates of deposit. The chancellor found that because there was a total lack of evidence to support the claim of a confidential relationship between Nannie Mae and Tony, Foster had no hope of success in pursuing the action. The chancellor found Foster and his attorney jointly and severally liable for attorney's fees and expenses in the amount of $5,086.02. Final judgment was entered on September 19, 2000.

¶12. Aggrieved, Foster and his attorney, Danny L. Lowrey, appealed the award of attorney's fees and expenses on October 13, 2000. Foster has not appealed the chancery court's finding that the funds represented by the certificates of deposit became the property of Tony upon Nannie Mae's death. Thus, the only issue presented to this Court is:

> **WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN HOLDING FOSTER AND HIS ATTORNEY JOINTLY AND SEVERALLY LIABLE FOR ATTORNEY'S FEES AND EXPENSES PURSUANT TO THE LITIGATION ACCOUNTABILITY ACT OF 1988.**

## DISCUSSION

¶13. The Litigation Accountability Act of 1988, Miss. Code Ann. §§ 11-55-1 et seq. (Supp. 2001), provides that a court shall award reasonable attorney's fees and costs against any party or attorney upon finding that "an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment...." The fees and costs may be assessed against the offending attorneys or parties, or both. *Id.* § 11-55-5(3). The Act defines "without substantial justification" as "frivolous, groundless in fact or in law, or vexatious, as determined by the court." *Id.* § 11-55-3(a). When reviewing a decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, this Court is limited to a consideration of whether the trial court abused its discretion. *Scruggs v. Saterfiel*, 693 So. 2d 924, 927 (Miss. 1997); *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188, 197 (Miss. 1995); *Jackson County Sch.*

*Bd. v. Osborn*, 605 So. 2d 731, 735 (Miss. 1992).

¶14. According to Miss. Code Ann. § 81-5-63, the creation of a certificate of deposit creates an automatic presumption of "intent" to give ownership to the persons named on the CD, whether living or as survivors. Such presumptive title may be defeated upon proof of forgery, fraud, duress, or - as alleged here - unrebutted presumption of undue influence. *Madden v. Rhodes*, 626 So. 2d 608, 617 (Miss. 1993) (citing *Cooper v. Crabb*, 587 So. 2d 236, 242 (Miss. 1991)). Where a gift, such as the one at hand, is *inter vivos*, a presumption of undue influence arises upon clear and convincing evidence of the existence of a confidential relationship between the donor and the donee. *Madden*, 626 So. 2d at 618; *Whitworth v. Kines*, 604 So. 2d 225, 230 (Miss. 1992) (citing *Mullins v. Ratcliff*, 515 So. 2d 1183, 1192 (Miss. 1987)). Thus, in order to prevail in this action, Foster was first required to demonstrate by clear and convincing evidence that a confidential relationship existed between Tony and Nannie Mae. The chancellor found that, not only did Foster fail to offer clear and convincing evidence of a confidential relationship, he failed to offer any evidence tending to demonstrate such a relationship.

¶15. This Court has defined a confidential relationship as follows:

> Whenever there is a relationship between two people in which one person is in a position to exercise dominant influence upon the other because of the latter's dependency upon the former, arising either from weakness of the mind or body, or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character.

*Madden v. Rhodes*, 626 So. 2d at 617 (citing *Hendricks v. James*, 421 So. 2d 1031, 1041 (Miss. 1982)). Stated otherwise, a confidential relationship exists when one has a dominant, overmastering influence over a person dependant upon him. *Hendricks v. James*, 421 So. 2d at 1041. The party asserting that a confidential relationship exists has the burden of establishing such a relationship by clear and convincing evidence. *Whitworth v. Kines*, 604 So. 2d at 230 (citing *Mullins v. Ratcliff*, 515 So. 2d at 1192).

¶16. The only evidence put forth by Foster regarding the existence of a confidential relationship was that Nannie Mae and Foster were related, Tony believed Nannie Mae trusted him, and Tony performed various household chores and ran errands for Nannie Mae because she was physically unable to do them herself. Based on the evidence presented by Foster at trial, or lack thereof, this Court cannot say the chancellor abused his discretion in finding that Foster's case had no hope of success.

¶17. This Court has stated that a familial relationship is not intrinsically one of confidence. *McNeil v. Hester*, 753 So. 2d 1057, 1065 (Miss. 2000) (citing *Saulsberry v. Saulsberry*, 232 Miss. 820, 834, 100 So. 2d 593, 599 (1958)). Furthermore, the Court of Appeals recently addressed a similar fact situation involving a testamentary gift in *Estate of Hart v. James*, 758 So. 2d 436 (Miss. Ct. App. 1999). There the testatrix left assets to James, who had been caring for her and tending to her needs. The court noted that although the record reflected that the testatrix relied on James for transportation and assistance around the house, such was not clear and convincing evidence of a confidential relationship. *Id.* at 439. The court explained that needing assistance with household chores and running errands is not equivalent to being dependant upon someone and that helping someone with household chores and running errands does not by itself signify the exertion of a dominant influence. *Id.*

¶18. Even the evidence offered by Foster showed that Nannie Mae was determined, independent, and

inclined to make her own decisions. Though Tony wrote checks on Nannie Mae's account to cover her utility bills and the like, he did not take Nannie Mae's business responsibilities away or attempt to influence her decisions. The record shows that Nannie Mae managed her own financial affairs until the time of her death and that she never confided in Tony. There was no evidence that Nannie Mae was not competent to handle her own affairs at any time prior to her death. Tony testified that he did not know his name was on the CD's and stated that he was not present when the CD's were issued. No evidence was offered by Foster to contradict Tony's testimony. No evidence was offered to show Tony was involved in the issuance of the CD's.

¶19. Though Tony himself had the funds from the savings account transferred to CD Number 156906, Foster agrees that Tony had a right to do so as he was a joint owner of the account. Foster asserts in his brief to this Court that as soon as he was made aware that this CD represented funds from a savings account of which Tony was joint owner, he effectively abandoned his claim to this CD. Foster states that he made counsel for the Appellee aware that he had abandoned a claim to this CD prior to the hearing before the chancellor, but no such communication exists in the record. Foster states that he was "candid" with the chancellor about the abandonment of this claim in his proposed findings of fact and conclusions of law submitted to the chancery court. There is no mention, however, in the record, that Foster notified the chancellor that he had abandoned this claim prior to the hearing or attempted to amend his complaint. In fact, in his opening statements to the chancery court at the hearing on this matter, Foster's attorney again stated that this CD, along with two others, should be declared as belonging to the estate.

¶20. Foster reasonably should have known, based on our case law, that the mere facts that a familial relationship existed between Tony and Nannie Mae and that Nannie Mae depended on Tony to perform household chores and run errands for her were insufficient to establish a confidential relationship between the two. Foster asserts that the opinion of the Court of Appeals in *In re Estate of Coleman*, 738 So. 2d 773 (Miss. Ct. App. 1999), gave him "hope of success." In *Coleman*, the Court of Appeals determined that a confidential relationship existed between the testatrix, Coleman, and her neighbor, McVey. The evidence showed that Coleman was entirely dependent upon McVey to provide meals and other necessities of day-to-day living as well as to handle her financial matters. *Coleman* is clearly distinguishable from the case at hand in that, in *Coleman*, McVey clearly handled Coleman's financial matters and Coleman depended on McVey to do so. There was significant testimony in the case sub judice, not only from Tony, but also from Foster, that Nannie Mae independently handled her own affairs, without the assistance of Tony or anyone else in the family.

¶21. In his brief to this Court Foster states that since the depositions of Tony and Foster, the only additional fact which came to the attention of Foster and his attorney was that Nannie Mae was, at times, a strong-willed person. It is evident from the testimony at trial through which portions of Foster's deposition were admitted, that Foster was aware of this fact even at the time of his deposition. Foster states that even though Tony's deposition testimony indicates that he was in another part of the bank when the CD's were issued, Foster "continued to believe [Nannie Mae] would never knowingly contradict the terms of her will and that she had been under the dominance of Mr. Ross." A plaintiff's belief alone will not garner a "hope of success" where a claim has no basis in fact. Foster's lack of understanding of what the law requires, and his attorney's failure to apprize him of it, is indicated by Foster's testimony on cross-examination by defense counsel, James Price:

Mr. Price: Do you have any understanding of negotiable instruments or tenancies by the entirety, or

joint tenancy with the right of survivorship? Do you know what any of those words mean?

Foster: No, but [the certificates of deposit] was supposed to have been in my mother's and my grandmother's names to start with.

Mr. Price: And if they were joint tenants when your mother died, they became your grandmother's property, didn't they?

Foster: I don't know, my mother's name was on 'em.

¶22. In addition to arguing that the action was not without hope of success, Foster asserts that this Court must reverse the chancellor's award because the chancellor did not specifically address each factor set forth in Miss. Code Ann. § 11-55-7 (Supp. 2001) (the statute lists factors to be considered by the trial court when granting an award of costs and attorney's fees). This Court addressed a similar argument in ***[Wheeler v. Stewart](#)***, 798 So. 2d 386 (Miss. 2001). There the Court held that though the trial judge did not discuss the factors set forth in § 11-55-7, his opinion, which included findings of fact and conclusions of law, did include sufficient specific reasons to justify the award. The Court did, however, encourage the bench and bar to address each of the factors set forth in § 11-55-7, in order to provide a record on which this Court may more accurately apply the abuse of discretion standard. ***Wheeler***, 798 So. 2d at 394 n.1.

¶23. In the case at bar, the chancellor included in his opinion, at the request of Foster's attorney, findings of fact and conclusions of law which support his decision to impose sanctions. Foster does not point to any relevant facts regarding the existence of an alleged confidential relationship which were not known to Foster at the time he filed his complaint or available to him. Even Foster agrees that his claim to CD number 156906 was without foundation, and he continued to claim an interest in that certificate long after his attorney knew that he had none. It is, therefore, the conclusion of this Court that this action was groundless in fact and that the chancellor did not abuse his discretion in holding that it was brought without substantial justification.

## CONCLUSION

¶24. For these reasons, the chancellor's judgment awarding sanctions is affirmed.

¶25. **AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. Foster's mother, Maxine Morris, is the deceased daughter of Nannie Mae. Because Nannie Mae's will divides her property between Maxine and Ross, Foster presumably takes Maxine's share under the will, hence his desire to have the proceeds of the CD's returned to the Estate.

2. Foster does not dispute that upon Maxine's death, Tony and Nannie Mae became the sole owners of the account.

3. It is not contended that either Maxine or Tony contributed to the funds represented by any of these CD's.