832 So.2d 615 (2002)
In the Matter of the ESTATE OF Shirley Wright VOLMER: Joseph K. Volmer, Executor, Appellant
v.
John S. VOLMER and Eleanor J. Volmer Patterson, Appellees.
No. 2001-CA-01110-COA.
Court of Appeals of Mississippi.
December 10, 2002.
*617 Joe Morgan Wilson, Sanatobia, for appellant.
George McFall, Southaven, William Bolton Seale, Memphis, TN, for appellee.
Before KING, P.J., BRIDGES AND LEE, JJ.
KING, P.J., for the Court:
¶ 1. The will of Shirley M. Volmer was contested and successfully set aside in the Chancery Court of DeSoto County. The proponent of the will, Joseph K. Volmer, appeals. Finding an absence of abuse of the chancery court's discretion, we affirm the chancellor's decision.

Facts
¶ 2. In February 1999, Mrs. Volmer executed a will devising her property among her three living children, Joseph K. Volmer, John A. Volmer, and Eleanor Volmer Patterson. Her husband and a son, William T. Volmer, predeceased her. Attorney Kevin O'Brien drafted the will Mrs. Volmer executed. In late May, 1999, Joseph Volmer contacted his mother's attorney, Kevin O'Brien, and informed him of his mother's desire to modify her February 1999 will. Specifically, Joseph Volmer informed O'Brien that his mother wanted to eliminate the provision of her current will which left a life estate in her home to her daughter Eleanor Volmer Patterson. O'Brien testified that he prepared the revision but did not personally speak with Mrs. Volmer about it.
¶ 3. After preparing the new will, O'Brien gave the draft will to Joseph Volmer along with a letter of instruction for its execution. In June 1999, Ms. Volmer was hospitalized and diagnosed with pancreatic cancer at a terminal stage. Joseph Volmer made the arrangements for execution of the will by coordinating the presence of witnesses and a notary. The will was executed in the hospital on June 18, 1999. She passed away on July 20, 1999.
¶ 4. Joseph Volmer, as executor of his mother's estate, submitted the new will for probate. His brother and sister initiated an action contesting the will on the grounds of undue influence and a lack of testamentary capacity. The chancery court set aside the will on the grounds of *618 undue influence, and held that the matter of testamentary capacity need not be addressed because of its ruling on undue influence.

Issues
¶ 5. Joseph Volmer raises the following issues in this appeal:
1. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN HAVING THE APPELLANT REMOVED FROM THE COURT DURING THE PROCEEDINGS INVOLVED IN THIS MATTER.
2. WHETHER THE CHANCELLOR MADE AN ERROR OF LAW IN FINDING A PRESUMPTION OF UNDUE INFLUENCE PRIOR TO FINDING THAT A CONFIDENTIAL RELATIONSHIPS EXISTED BETWEEN THE APPELLANT AND THE DECEDENT.
3. WHETHER THE CHANCELLOR ERRED IN OVERSTATING FACTS NOT IN EVIDENCE AND IGNORING CERTAIN FACTS IN EVIDENCE.

Resolution of the Issues
1. Removal from the courtroom
¶ 6. Joseph Volmer was removed from the courtroom on instructions by the chancellor because of unruly conduct. The chancellor admonished Joseph Volmer about certain conduct which was disruptive to the court proceedings, and requested that he discontinue that behavior. With the second admonition, the chancellor warned Joseph Volmer that should he persist in that conduct, he would be removed from the courtroom. Joseph Volmer continued his behavior and was escorted out of the courtroom by the bailiff. In ordering Joseph Volmer removed from the courtroom the chancellor stated
I have twice warned you before this time. You have sat there and you have laughed twice while this witness is testifying. I'm not going to permit you to interrupt or intimidate a witness. I'm going to ask the bailiff to take you and sit you back in that courtroom back there and remove you from these proceedings until such time as I determine that you can come back and behave.
When Volmer's attorney was cross-examining John Volmer, one of the Appellees, the chancellor paused in the proceedings to give Joseph Volmer's attorney the opportunity to consult with him in order that counsel could effectively cross-examine the witness. Counsel consulted with Joseph Volmer and returned to cross-examine the witness John Volmer. Joseph Volmer now claims that his expulsion from the courtroom prevented effective cross-examination of John Volmer, and thereby prejudiced his case. Joseph Volmer suggests that his presence was essential in the courtroom, so that as he heard the testimony, he could suggest questions to be asked of the witness.
¶ 7. We have reviewed the record regarding Joseph Volmer's instances of misconduct cited by the chancellor and find no prejudice occurred as a result of his removal from the courtroom. The chancellor has the authority to maintain proper decorum in his courtroom. Unif. Ch. Ct. R. 1.01. We review the exercise of that authority under an abuse of discretion standard. McNeil v. Hester, 753 So.2d 1057 (¶ 21) (Miss.2000). Having been twice warned that his remarks, gestures and laughter during the testimony were improper, Joseph Volmer was well informed of what actions were required, if he were to remain in the courtroom. He deliberately ignored the chancellor's directives, and after an appropriate warning was removed from the courtroom. We *619 cannot say that the chancellor abused his discretion in doing so.
¶ 8. Notwithstanding Joseph Volmer's disruptive behavior, the chancellor paused in the proceeding to afford the opportunity for consultation between Joseph Volmer and his attorney before cross-examination of opposing witnesses. Given Joseph Volmer's intentional disruptive behavior in the courtroom and the chancellor's efforts at assuring that trial would proceed with Joseph Volmer's input through consultation with his counsel, this Court finds no abuse of the chancellor's discretion.
2. Confidential relationship
¶ 9. Joseph Volmer argues on appeal that the chancellor erred in failing to find a confidential relationship existed between Joseph Volmer and his mother, Shirley Volmer, before deciding that Joseph Volmer exerted undue influence over his mother and therefore setting aside the will.
¶ 10. A chancellor's findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or where it is determined that the chancellor applied an erroneous legal standard. Tinnin v. First United Bank, 570 So.2d 1193, 1194 (Miss.1990). If the chancellor's findings are supported by substantial, credible evidence in the record, this Court will not reverse. Id.
¶ 11. Here, Joseph Volmer challenges the chancellor's failure to make a specific finding that a confidential relationship existed before moving on the matter of whether the presumption of undue influence applied. While the chancellor did not, in his opinion, use the words "confidential relationship," the chancellor did state:
A presumption of undue influence arises where a beneficiary actively participates in the procurement, preparation or execution of the will. Croft. v. Alder, 237 Miss. 713, 115 So.2d 683 (1959). In the case at bar, there can be no doubt with respect to the will in question, the beneficiary, Joseph K. Volmer, took any and all steps necessary for the procurement and execution of the will. There is no evidence whatsoever that the ultimate testatrix participated in anything other than the signing of the will. The arrangements for the drafting of the will, the conversations with counsel, the delivery of the prepared document to the testatrix, the procurement of witnesses, including a notary, and the safekeeping of the document following its execution were all the product of the beneficiary, Joseph K. Volmer.
¶ 12. Mississippi case law provides that the existence of a confidential or fiduciary relationship gives rise to a presumption of undue influence. Croft v. Alder, 237 Miss. 713, 725, 115 So.2d 683, 687 (1959). It is part of the will contestant's case, and it is the burden of the contestant to establish the existence of a confidential relationship between the testator and the beneficiary. Norris v. Norris, 498 So.2d 809, 813 (Miss.1986).
¶ 13. There can be no doubt but that a confidential relationship must be established, before the presumption of undue influence arises, and is required to be rebutted by the will's proponent. Murray v. Laird, 446 So.2d 575, 578 (Miss.1984).
¶ 14. Consequently, we find here that the chancellor erred in failing to make a determination that a confidential relationship existed between Joseph Volmer and his mother. However, we hold it to be harmless error, because there was substantial evidence in the record to support a finding that a confidential relationship did indeed exist between Joseph Volmer and *620 his mother. We note that while the chancellor did not clearly make such a finding, it is obvious from the chancellor's opinion that he believed as much.
¶ 15. Elements in determining the existence of a confidential relationship between testator and beneficiary are:
(1) Whether one person has to be taken care of by others, (2) Whether one person maintains a close relationship with another, (3) Whether one person is provided transportation and has their medical care provided for by another, (4) Whether one person maintains joint accounts with another, (5) Whether one is physically or mentally weak, (6) Whether one is of advanced age or poor health, and (7) Whether there exists power of attorney between one and another.
Estate of Dabney, 740 So.2d 915, 919 (¶ 12) (Miss.1999) (citations omitted). "Suspicious circumstances surrounding the creation of the will also raise the presumption of undue influence." Id. at (¶ 21).
¶ 16. The record makes it abundantly clear that Mrs. Volmer was of advanced age and in poor health when she executed the June 1999 will. Her primary care physicians testified as to her poor health and that she was influenced by prescription medications which affected her ability to reason at or near the time she executed the June 1999 will. The record reflects that Joseph Volmer had joint ownership of his mother's checking account. In addition, he held a power of attorney in the event of her death. Joseph Volmer testified that from November 1998 until February 1999, he "exclusively" visited with his mother, indicating that she had no contact with his brother John or his sister Eleanor Patterson during that time. These things support the existence of a confidential relationship between Joseph Volmer and his mother.
¶ 17. Alternatively, Joseph Volmer argues that in the event that this Court determines that a confidential relationship existed, he met his burden in overcoming the presumption of undue influence. As such, he maintains that the chancellor's ruling on undue influence was wrong.
¶ 18. To overcome the presumption of undue influence in a case such as this, the proponent of the will must show:
1. The beneficiaries must have acted in good faith.
a. Who initiated the procurement of a will?
b. Where was the will executed and in whose presence?
c. What consideration was paid?
d. Who paid the consideration?
e. Was there secrecy or openness in the execution?
. The testatrix must have had full knowledge and deliberation in the execution.
a. Was the testatrix aware of her total assets and their general value?
b. Did the testatrix understand who her natural inheritors were?
c. Did the testatrix understand how the change would legally effect [sic] prior wills?
d. Did the testatrix know that nonrelative beneficiaries would be included?
e. Did the testatrix know who controlled her finances and by what method?
1. How dependent is the testatrix on those handling her finances?
2. How susceptible is she to influence by those handling her finances?
3. The testatrix must have exhibited independent consent and action.
In Re Last Will and Testament and Estate of Smith, 722 So.2d 606 (¶ 22) (Miss. *621 1998). The chancellor found that Joseph Volmer had not overcome the presumption of undue influence. The chancellor determined that (1) there was a lack of good faith on the part of Joseph Volmer, (2) Joseph Volmer initiated the procurement of the will, (3) he was present when the will was executed, (4) he paid consideration for the will, (5) Mrs. Volmer was using a number of medications, (6) because of the medications and her physical illness she was in a "seriously weakened state," (7) there was no independent evidence that Mrs. Volmer had any knowledge of her actions or the consequences of those actions in executing a new will, (8) Mrs. Volmer had no independent involvement in the preparation of the June 1999 will, and (9) that her consent to execute the will was directed by Joseph Volmer. As such, the chancellor found that evidence to overcome the presumption of undue influence fell "woefully short." The chancellor also stated:
The evidence before the Court, particularly the demeanor of the witness and beneficiary, Joseph K. Volmer, as portrayed during this court proceeding, conclusively convinces this Court that the actions of the testatrix, Shirley Volmer, in executing the will of June 18, 1999, were the derivative product of an overbearing son determined for events to be as he desired them.
¶ 19. Having reviewed the record, we find that there was sufficient evidence to support that a confidential relationship existed between Joseph Volmer and his mother, and the chancellor's ruling of undue influence. Our standard of review requires that we affirm the chancellor in the absence of manifest error, abuse of discretion or an error of law. Finding none of these occurred here, we affirm the chancellor's ruling in setting aside the June 1999 will.
3. Overstating and ignoring facts
¶ 20. In this last assignment of error, Joseph Volmer maintains that the chancellor committed reversible error when he "overstated" certain facts and ignored others as evidenced by his opinion. In particular, Joseph Volmer challenges the chancellor's opinion (1) that Mrs. Volmer's health plummeted after February 1999 until her death in July of that year; (2) that a lack of good faith was shown on the part of Joseph Volmer; (3) that Joseph Volmer was present in the room at the time the contested will was executed; and (4) that Mrs. Volmer did not discuss the contents of the contested will with anyone other than Joseph Volmer. The Appellant contends that evidence shows that Mrs. Volmer's health did not "plummet" after February 1999 as the chancellor found; rather, Joseph Volmer maintains that Mrs. Volmer's health did not begin to decline until she was hospitalized and diagnosed with pancreatic cancer. Appellant Volmer also asserts that there is no evidence that he exhibited a lack of good faith. Likewise, Joseph Volmer states that he was not present in the room at the time his mother executed the new will, contrary to testimony elicited at trial. Finally, Joseph Volmer points out that there was some testimony that the notary assisting in the execution of the will obtained information independently from Mrs. Volmer prior to the signing of the will.
¶ 21. The matters raised by Joseph Volmer are questions of fact to be resolved by the trier of fact. Mississippi State Tax Com'n v. Oscar E. Austin Trust, 719 So.2d 1172 (¶ 13) (Miss.1998). When considering the decisions of a chancellor on appeal, this Court has a limited standard of review. McNeil v. Hester, 753 So.2d 1057 (¶ 21) (Miss.2000). "The chancellor, *622 as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Fisher v. Fisher, 771 So.2d 364(¶ 8) (Miss.2000). The chancellor is the factfinder and is charged with the obligation of resolving disputes between the parties and likewise is the sole arbiter of the credibility of the witnesses. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). Where the record contains substantial credible evidence to support the chancellor's findings, we will defer to them. Suess v. Suess, 718 So.2d 1126(¶ 15) (Miss.Ct.App.1998).
¶ 22. The record before this Court contains substantial and credible evidence upon which the chancellor could make these findings. There was conflicting testimony on these matters. As fact finder, the chancellor was charged with the duty of weighing the evidence and determining the credibility of the witnesses. The chancellor was within his discretion in deciding each of these matters and we find no manifest error on the part of the chancellor. Accordingly, we affirm.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.