990 So.2d 230 (2008)
In the Matter of the Last WILL and TESTAMENT OF Myrtle Estelle Moore BOYLES, Deceased.
Peggy Windham, Dorothy Gibbons, Bobby Barnes, Robert D. Boyles, James C. Boyles, Rachel G. Russum, Willie J. Gaskin, and Bobby J. Boyles, Appellants
v.
Jane P. Tadlock and Robert B. Tadlock, Appellees.
No. 2007-CA-00378-COA.
Court of Appeals of Mississippi.
March 18, 2008.
Rehearing Denied June 3, 2008.
Certiorari Denied September 11, 2008.
*231 Gregory Moreau Johnston, Lem G. Adams, Brandon, attorneys for appellants.
Aleita M. Sullivan, Mendenhall, attorney for appellees.
Before KING, C.J., ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. After the sole beneficiary of Estelle Boyles's will met an untimely death, Mrs. Boyles decided to update her will. On May 3, 1999, she did just that and executed a will leaving the entirety of her estate to her long-time friend, Jane Tadlock. Following Mrs. Boyles's death, Mrs. Tadlock and her husband probated the will in the Chancery Court of Smith County, but they met with opposition from the heirs-at-law of Mr. Boyles, who predeceased his wife. They, along with other interested parties who would be added in an amended petition, filed a petition with the trial court, claiming that Mrs. Tadlock came by her position as sole beneficiary through undue influence and that a confidential relationship existed between the two women. Prior to trial, several documents were introduced into evidence by stipulation of all parties; however, the chancellor would not allow questioning or reference to the documents that concerned events that occurred after the will was executed. After the hearing, the trial court dismissed the petition, and the instant appeal followed.
¶ 2. The following issues are raised on appeal:
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND MRS. BOYLES LACKED THE TESTAMENTARY CAPACITY TO EXECUTE THE WILL;

*232 II. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT AND CONSIDER POST-WILL EVIDENCE;
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THE EXISTENCE OF A CONFIDENTIAL RELATIONSHIP;
IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND MRS. TADLOCK BREACHED HER FIDUCIARY DUTY TO MRS. BOYLES; AND
V. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT ADDING MRS. TADLOCK AS A JOINT HOLDER OF CERTIFICATES OF DEPOSIT HELD BY MRS. BOYLES WAS AN INVALID INTER VIVOS GIFT.
¶ 3. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 4. William and Estelle Boyles were married for several decades, but they never had children. Additionally, Mrs. Boyles did not have any siblings. In the 1970s, the Boyles and Tadlocks developed a friendship that they cultivated over the next several years. They dined together, attended the same church, and visited each other's homes regularly. In the late 1990s, Mr. Boyles began to experience health problems and was in and out of a hospital in Jackson, Mississippi and eventually Kosciusko, Mississippi during the last year of his life. Prior to the point that Mr. Boyles was hospitalized, he filled the dominant role in the relationship, making most of the decisions for the couple.
¶ 5. During part of the time when Mr. Boyles was ill, Billy Barnes, Mrs. Boyles's first cousin, assisted her with certain tasks. He would take her to see Mr. Boyles, to the grocery store, to pick up her medication, and would help her with other tasks. Others helped also, including Mr. Barnes's wife, Doris Barnes, and Mrs. Tadlock. During this point in time, although her husband was still alive, Mrs. Boyles's then-current will left the entirety of her estate to Mr. Barnes.
¶ 6. In April 1999, Mr. Barnes was involved in a tragic accident and died as a result. Soon after, Mrs. Boyles visited Rick Clark, the attorney who prepared her previous will, which left all her assets to Mr. Barnes. Mrs. Boyles asked Clark to prepare a new will leaving her estate to Mrs. Tadlock. Clark complied, and on May 3, 1999, Mrs. Boyles executed the currently contested will. Additional facts surrounding the transaction will be discussed below, as needed.
¶ 7. The Tadlocks filed a petition to probate the May 3, 1999, will on August 6, 2002, and obtained an order admitting it to probate that was filed the same day. Soon thereafter, Robert Boyles, James Boyles, Rachel Russum, Willie Gaskin, and Bobby Boyles filed a petition contesting the will in the Smith County Chancery Court. As a result of a motion to dismiss filed by the Tadlocks, an amended petition contesting the will was filed and included the original plaintiffs, as well as Peggy Windham, Dorothy Gibbons, and Bobby Barnes (all petitioners collectively referred to as "the Windhams"). Peggy Windham, Dorothy Gibbons, and Bobby Barnes were heirs-at-law of Mrs. Boyles. Following subsequent unsuccessful motions to dismiss, the case went to trial on May 25, 2005.
¶ 8. At the outset of trial, several exhibits were introduced into evidence by stipulation of all parties. These exhibits included evidence of events that occurred both pre-will and post-will. However, during the Windhams' case-in-chief, the trial court would not allow examination of witnesses on matters that occurred after the May 3, 1999, will was executed. After the *233 Windhams rested, the Tadlocks motioned the trial court to dismiss the case, and the court took the motion under advisement. After additional motions were filed, which are not pertinent to the issues raised in the instant appeal, the trial court dismissed the Windhams' cause of action finding that there was no confidential relationship between Mrs. Boyles and Mrs. Tadlock. This appeal soon followed.

STANDARD OF REVIEW
¶ 9. This Court considers decisions of chancellors under a limited standard of review. McNeil v. Hester, 753 So.2d 1057, 1063(¶ 21) (Miss.2000). Specifically, "[t]he chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Volmer v. Volmer, 832 So.2d 615, 621-22(¶ 21) (Miss.Ct.App.2002) (quoting Fisher v. Fisher, 771 So.2d 364, 367(¶ 8) (Miss.2000)). As well as being the fact-finder, the chancellor is the sole judge of the credibility of witnesses when resolving discrepancies in a witness's testimony. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). Its findings will not be disturbed unless this Court finds that they were made in manifest error. Richardson v. Cornes, 903 So.2d 51, 56(¶ 18) (Miss. 2005). In other words, "where the record contains substantial credible evidence to support the chancellor's findings, we will defer to them." Volmer, 832 So.2d at 622(¶ 21). Errors of law, however, are reviewed de novo. Cooper v. Crabb, 587 So.2d 236, 239 (Miss.1991).

ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND MRS. BOYLES LACKED THE TESTAMENTARY CAPACITY TO EXECUTE THE WILL.
¶ 10. At trial, the proponents carry the burden of proof, which they meet "by the offering and receipt into evidence of the will and the record of its probate. A prima facie case is made by the proponent solely by this proof." Harris v. Sellers, 446 So.2d 1012, 1014 (Miss.1984) (overruled in part on other grounds). After the proponents make a prima facie case, although the burden of proof remains on them, the burden of going forward with the proof of testamentary incapacity shifts to the contestants, who must overcome the prima facie case. In re Estate of Edwards, 520 So.2d 1370, 1373 (Miss.1988).
¶ 11. The Windhams argue that the trial court erred in failing to set aside Mrs. Boyles's will for lack of testamentary capacity at the time of execution. The Windhams claim that on May 3, 1999, Mrs. Boyles could not have had testamentary capacity to enter into a will as a result of the "host of negative forces and factors [that] were colliding in" her life. These included, according to the Windhams, the facts that: (1) Mrs. Boyles was eighty-five years old, (2) had an arthritic condition in her back and knees, (3) had been characterized as having a less than average level of intelligence, (4) had recently lost her "favorite" cousin in a four-wheeler accident, and (5) was dealing with the absence and illness of her husband.
¶ 12. In determining whether the testator had the requisite capacity to enter into a will, this Court has stated that the test is "the ability of the testator at the time to understand and appreciate the nature and effect of his act, the natural objects or persons to receive his bounty, and their relation to him, and is capable of determining what disposition he desires to make of his property." In re Estate of Hart, 758 So.2d 436, 438(¶ 11) (Miss.Ct.App.1999) (quoting Humes v. Krauss, 221 Miss. 301, 310, 72 So.2d 737, 739 (1954)).
*234 ¶ 13. During the May 2004 trial, the deposition of Dr. John Lee was read into evidence. Dr. Lee stated that he had been Mrs. Boyles's primary family physician since the later part of 1977. He testified that he saw Mrs. Boyles on March 29, 1999, then again on July 31, 1999. He stated that her only consistent complaints prior to May 3, 1999, were high blood pressure and arthritis. However, in his opinion, if Mr. Boyles was removed from her life, she would suffer from anxiety and depression. He added that until August 2001, Mrs. Boyles was in fairly good health. He was also of the opinion that Mrs. Boyles had a below average IQ, and he did not think she could manage complicated legal or financial matters. However, on cross-examination he qualified his response by claiming that while he could not say she was an intelligent person, she was able to carry on a normal life. Finally, Dr. Lee stated that Mrs. Boyles began suffering from dementia in February 2001, and he did not think she would have been competent to handle her affairs after August 13, 2001.
¶ 14. Clark then testified that Mrs. Boyles set up the appointment for the May 3, 1999, will, and he was fairly certain she paid for it as well. He stated that it seemed unusual to change her will so soon after Mr. Barnes's death. However, she did not give a reason for changing the will, and he did not ask for one. He did ask several times if she was sure the May 3, 1999, will was what she wanted to do. According to Clark, she repeatedly responded "yes." He did not recall specifically informing Mrs. Boyles that the May 3, 1999, will would preclude her husband from being entitled to any inheritance, but he did explain the legal aspects of the will to her. In Clark's opinion, Mrs. Boyles knew the natural objects of her bounty and what she wanted to do. He stated "just from talking to her, [you could tell] that the lady knew what she wanted to do. And you could tell that, you know, she was an older lady, but she knew what she wanted to do." He stated that he was convinced she knew what she was doing and was intelligent enough to make the will.
¶ 15. In the instant case, our inquiry is whether the trial court was manifestly wrong in its decision that Mrs. Boyles had testamentary capacity on May 3, 1999. From the testimony above, it is clear that the Windhams failed to shoulder their burden of showing testamentary incapacity on the day the May 3, 1999, will was executed. While it is true that Mrs. Boyles suffered from painful arthritis, this Court has stated that "physical incapacity does not render one incapable of making a will." Johnson v. Dodson, 911 So.2d 961, 967(¶ 20) (Miss.Ct.App.2004). Additionally, in regard to a testator's intelligence, we have stated that "[a] testator does not have to have a certain level of intelligence before he can delineate how he wants his assets to be distributed upon his death." In re Estate of Hart, 758 So.2d at 439(¶ 12). Moreover, Clark testified that he was of the opinion that Mrs. Boyles possessed sufficient intelligence to execute her will. Finally, while it is true that Mrs. Boyles's life was certainly stressed on May 3, 1999, with the condition of her husband and recent death of Mr. Barnes, we cannot say that the chancellor was manifestly wrong in finding that Mrs. Boyles possessed testamentary capacity despite these hardships. This issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT AND CONSIDER POST-WILL EVIDENCE.
¶ 16. The Windhams argue that certain testimonial evidence that was proffered at trial and demonstrative evidence *235 stipulated to by all parties should have been considered by the chancellor in the determination of whether a confidential relationship existed. Specifically, the testimony and other evidence pertained to events that occurred after the May 3, 1999, will was signed by Mrs. Boyles. The Windhams argue that the post-will evidence "is highly relevant and admissible to prove Mrs. Tadlock's motive, opportunity, intent, preparation, and plan to unduly influence Mrs. Boyles to create the contested Will."
¶ 17. In support, the Windhams cite to Mississippi Rules of Evidence 401 and 404(b). However, as to the issue of the existence of a confidential relationship, the Windhams' reliance on Rules 401 and 404(b) is misplaced. As will be discussed below in Issue III, the central inquiry in determining the existence of a confidential relationship is whether such a relationship existed on May 3, 1999. See Lane v. Henderson, 930 So.2d 421, 426(¶ 14) (Miss. Ct.App.2005) (stating, "[c]learly the question at trial should have been whether a confidential relationship existed at the time of the transfer, not after the transfer had taken place"); In re Dunn, 784 So.2d 935, 940(¶ 15) (Miss.2001).
¶ 18. The Windhams argue that although the evidence concerns events that occurred after May 3, 1999, it should have nonetheless been considered by the trial court. This stands in direct contradiction to the importance of the timing of the execution of the will to the inquiry into whether a confidential relationship existed. Nevertheless, they claim that Rule 404(b), titled "CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES," can be used to show Mrs. Tadlock's alleged motive, opportunity, intent, preparation, and plan to influence the creation of the May 3, 1999, will. The Windhams contend that Rule 404(b) has been held to apply not only to prior acts, but to subsequent acts as well, citing Fielder v. Magnolia Beverage Co., 757 So.2d 925, 931(¶ 19) (Miss. 1999) in support of their position. In other words, the Windhams seek to show that Mrs. Tadlock unduly influenced the creation of the May 3, 1999, will with evidence of her actions after the will was executed.
¶ 19. However, without speaking to the accuracy of the Windhams' interpretation of Fielder, as a general matter, "`character evidence is not admissible in civil cases' unless character is one of the issues in the case." Fielder, 757 So.2d at 931(¶ 19) (quoting Daniels by Glass v. Wal-Mart Stores, Inc., 634 So.2d 88, 93 (Miss.1993)). When determining whether a confidential relationship exists, an individual's character is irrelevant. Therefore, as the evidence pertained to events that occurred post-execution, and character evidence is irrelevant to a determination of whether a confidential relationship existed, we find the trial court did not err in excluding the evidence.
¶ 20. As to the documents already admitted as evidence, those not considered by the trial court were irrelevant to a determination of whether a confidential relationship existed as they dealt with events that occurred post-execution. Therefore, "that it was received without objection avails them nothing." Cooper, 587 So.2d at 242. The chancellor correctly excluded them from consideration as to whether such a relationship existed. After a de novo review, we find this issue without merit.

III. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THE EXISTENCE OF A CONFIDENTIAL RELATIONSHIP.
¶ 21. The Windhams next argue that a confidential relationship existed between *236 Mrs. Boyles and Mrs. Tadlock on May 3, 1999, and the chancellor manifestly erred in finding otherwise. They argue that the testimony of Mrs. Tadlock, as well as other witnesses, established such a relationship. Therefore, a presumption of undue influence should have arisen. Based upon the testimony at trial, we find that the decision of the trial court was supported by substantial evidence.
¶ 22. A confidential relationship is one such that "a dominant, over-mastering influence controls over a dependent person or trust, justifiably reposed." Brown v. Ainsworth, 943 So.2d 757, 761(¶ 7) (Miss.Ct.App.2006) (quoting Wright v. Roberts, 797 So.2d 992, 998(¶ 7) (Miss.2001)). In order to determine whether such a relationship is present, a court should look to the following factors:
(1) whether one person has to be taken care of by others,
(2) whether one person maintains a close relationship with another,
(3) whether one person is provided transportation and has [her] medical care provided for by another,
(4) whether one person maintains joint accounts with another,
(5) whether one is physically or mentally weak,
(6) whether one is of advanced age or poor health, and
(7) whether there exists a power of attorney between the one and another.
Brown, 943 So.2d at 761(¶ 7) (citing Wright, 797 So.2d at 998(¶ 18)). In order to find a confidential relationship existed in the execution of a legal document, it must be shown that the factors listed above point to such a relationship at the time the document was executed. See Lane, 930 So.2d at 426(¶ 14) ("[T]he question at trial should have been whether a confidential relationship existed at the time of the [property] transfer, not after the transfer had taken place"); In re Dunn, 784 So.2d at 941-42(¶ 15). Finally, the Windhams had the burden to prove that a confidential relationship existed at the time the will was executed by clear and convincing evidence. Lane, 930 So.2d at 425(¶ 12).
¶ 23. Reviewing the testimony elicited at trial with regard to the factors set out above, we initially find that there was no evidence presented showing that Mrs. Tadlock maintained a joint account with Mrs. Boyles or possessed Mrs. Boyles's power of attorney at the time of execution of the will. It was established that Mrs. Tadlock knew Mrs. Boyles since they were children, and the pair became good friends during the 1970s. Mrs. Tadlock testified that she would take Mrs. Boyles to the grocery store, the doctor, and to buy medicine; but she stated that she only did these things on an occasional basis prior to May 3, 1999.
¶ 24. This was corroborated by the testimony of Doris Barnes, Billy Barnes's wife. She stated that Mr. Barnes would help Mrs. Boyles by taking her to the grocery store and to see Mr. Boyles in the hospital. Also, he would write checks for Mrs. Boyles from her accounts to pay for her expenses. Mrs. Barnes stated that when her husband died, she took over these duties and helped Mrs. Boyles as much as she could, but Mrs. Tadlock took Mrs. Boyles to see her husband in the hospital in Kosciusko. Mrs. Tadlock testified that Mrs. Boyles had other family members that would assist her on a more routine basis. Mrs. Tadlock also stated that, while Mr. Boyles was able, she and her husband would see the Boyleses socially and attend church with them. However, Mrs. Tadlock clarified that she did not participate in these events solely with Mrs. Boyles, but with a group of friends and parishioners.
*237 ¶ 25. The testimony also showed that Mrs. Boyles was eighty-four years of age at the time she executed the May 3, 1999, will, but Dr. Lee testified that she was in fairly good health, and as of May 3, 1999, she consistently complained of only high blood pressure and arthritis. Additionally, it appears from the record that while Clark was unsure as to whether Mrs. Tadlock accompanied Mrs. Boyles to his office, he testified that Mrs. Boyles initiated the drafting of the May 3, 1999, will herself and drove herself to his office.
¶ 26. It is clear that Mrs. Tadlock and Mrs. Boyles were close friends, and they had been for the better part of twenty years at the time Mrs. Boyles executed the May 3, 1999, will. Equally clear is the fact that Mrs. Tadlock helped Mrs. Boyles in many aspects of her life, as did others close to Mrs. Boyles. However, based upon the testimony presented at trial, we cannot say that the trial court was manifestly wrong in finding that a confidential relationship did not exist between the two women.
¶ 27. This issue is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND MRS. TADLOCK BREACHED HER FIDUCIARY DUTY TO MRS. BOYLES.
¶ 28. On October 17, 2000, Mrs. Boyles signed a power of attorney in favor of Mrs. Tadlock. Over the next one and a half years, Mrs. Tadlock used the power of attorney to secure certain loans with Mrs. Boyles's assets and wrote two checks to "cash" from Mrs. Boyles's accounts. The Windhams argue that these, as well as other actions, constituted a breach of the fiduciary duty accompanying Mrs. Tadlock's position as Mrs. Boyles's attorney-in-fact.
¶ 29. The Windhams argue that their breach of fiduciary duty claim was a separate cause of action and should have been considered independently from the issue of whether there was a confidential relationship. They claim "the trial court should have awarded compensatory and punitive damages against Mrs. Tadlock for her gross and intentional breach of duty as attorney-in-fact." However, the actual issue argued is unclear as the Windhams stated in their reply brief that "[a]s this was an independent action, and was highly probative as to the intent to unduly influence the making of the Will, the trial court erred in not considering Mrs. Tadlock's breach of the power of attorney."
¶ 30. As we held in Issue II, evidence of events that occurred after the will was executed cannot be considered by the trial court in determining whether a confidential relationship was present at the time of execution. Therefore, whether Mrs. Tadlock breached her fiduciary duty to Mrs. Boyles is irrelevant to that issue. Furthermore, under the specific facts of the case before us, whether Mrs. Tadlock breached her fiduciary duty is moot given our holding that no confidential relationship was present. Had the trial court found a breach, any damages awarded would have been awarded to Mrs. Boyles's estate. In turn, as the sole beneficiary of Mrs. Boyles's estate, Mrs. Tadlock would be entitled to the damages she paid.
¶ 31. This issue is without merit.

V. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT ADDING MRS. TADLOCK AS A JOINT HOLDER OF CERTIFICATES OF DEPOSIT HELD BY MRS. BOYLES WAS AN INVALID INTER VIVOS GIFT.
¶ 32. The Windhams argue that as a result of the confidential relationship between *238 Mrs. Boyles and Mrs. Tadlock, the post-will actions of Mrs. Boyles, adding Mrs. Tadlock as a joint holder of several certificates of deposit owned by Mrs. Boyles, should have been set aside by the chancellor. However, we have previously determined that the chancellor did not err in finding that no confidential relationship existed between Mrs. Tadlock and Mrs. Boyles. Therefore, as argued by the Windhams, this issue is moot.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF SMITH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.